MORTON J. SMITH ET AL. v. LORA A. CHIPLEY ET AL.

No. 5251.   Decided April 24, 1929.
(16 S. W., 2d Series, 269.)

*Lockhart, Garrard & Brown* and *Ben H. Powell,* for appellant.

The certified question should be answered in the affirmative, for where plaintiff and defendant undertake a joint venture to purchase an entire tract of some 19,000 acres which for convenience is divided into the West half and the East half, but which trade cannot be consummated without the purchaser taking the entire East half and West half, and when one of the joint adventurers or partners sues for his part of the profits on the East half of said land, and denies any interest in the West half and disclaims interest in the West half, he is estopped from later bringing suit to recover an interest in the West half.    10 R. C. L., Pages 689, 690, 699, 702; 2 Herman on Estoppel and Res Judicata, Page 1186, Section 1057; 21 C. J., Pages 1064–1066, Section 23; Brown v. O'Brien, 33 S. W., 267; Pyron v. Brownfield, 269 S. W., 202; 22 C. J., Page 333, Section 374; Flack v. Brannon, 101 S. W., 537; Ault v. Bradley, 90 S. W., 775; Long v. Martin, 260 S. W., 327, 114 Texas, 581; Wooters v. Hale, 3 S. W., 725; Crane v. Leon and H. Blum, 56 Texas, 325; Carson v. McCormick Harvesting Mach. Co., 44 S. W., 406; Gordon v. Thorp, 53 S. W., 357; Johnson v. Byler, 38 Texas, 606; Tolleson v. Wagner, 80 S. W., 846; Craig v. Broocks, 127 S. W., 572.

*Bean & Klett,* for appellee.

Logically and legally, as well as morally, if the judgment of the trial court on the East half was a just and righteous judgment under the plaintiff's petition (which pleading must be tested by its own averments, and not by extraneous statements) and such judgment was upheld by the Supreme Court as being sustained by said petition (the question of the sufficiency of the petition being the only question) it would not and could not matter how many incorrect statements appellee had made on the outside of the petition.    The petition could not be added to or taken from by outside statements, whether true or false.

A fair construction of the application for writ of error shows that the attack is predicated on the theory of law advanced by the Court of Civil Appeals as to the proper remedy.    There was no issue

involved in the former suit whatever as to whether Mrs. Chipley did or did not have an interest in the West half or right to maintain a cause of action thereon. The suit related solely to the East half. Whatever the attorneys may have said outside of the issues made by the pleadings in that case, or whatever the Supreme Court may have said outside the pleadings involved in the case, would be remote to any issue and without the scope of the case.

Under Court of Civil Appeals' own citation of authority the so-called admission in the former suit on the East half is not binding in the present suit on the West half because of any one of the three following reasons: (1) The statement was *not* made in the *pleadings*. (2) It was not made in the *same action*, but in a different action and in a different proceeding. And (3) it was an *argument on the law* regarding the sufficiency of the plaintiff's petition, and not the statement or admission of a fact.

MR. JUDGE CRITZ delivered the opinion of the Commission of Appeals, Section A.

The Court of Civil Appeals for the Seventh District presents the following certificate and question:

"On the 3rd day of September, A. D., 1921, Minnie Slaughter Veal, joined by her husband, G. T. Veal, and H. D. Chipley of Crosby County, Texas, entered into a contract of sale whereby approximately 20,000 acres of land, situated in Cochran County, Texas, was sold by the Veals to Chipley. Chipley, afterwards, on the same date, transferred to Morton J. Smith and Frank Vaughn, jointly, a one-half interest in and to the contract of purchase and sale above noted, and on the 3rd day of January thereafter, Frank Vaughn assigned his one-fourth interest in the contract to said Morton J. Smith. On July 3, 1922, Chipley assigned one-fourth of his interest in the original contract to R. Taylor Woodson. On Nov. 22, 1922, Chipley assigned all of his interest in the Veal contract to Morton J. Smith. This placed the ownership under said contract three-fourths in Morton J. Smith and one-fourth in R. Taylor Woodson.

"The above mentioned 20,000 acres of land was divided into two bodies, recognized as the east half and the west half.

"Mrs. Lora A. Chipley, as the surviving wife of R. Taylor Woodson, deceased, joined by her present husband, H. D. Chipley, brought a suit in the District Court of Lubbock County, in cause No. 2692, on the docket of this Court, to recover a one-fourth interest in the profits realized by the sale of the east half of said land. Said cause

was numbered on the docket of the District Court of Lubbock County No. 2013, in this Court No. 2692, and in the Commission of Appeals No. 763–4734. The trial in the District Court in said cause No. 2013 resulted in a judgment for the plaintiff, Mrs. Chipley. On appeal to this Court, said cause was reversed upon the following grounds:

"(1) The fact that the provisions of the Veal-Chipley contract were carried out, and Mrs. Veal transferred the vendor's lien notes as agreed, does not, under the record in this case, make the notes' profits subject to a division without a settlement and accounting of the partnership affairs.

"(2) The record discloses without contradiction that, in order to close the Veal-Chipley contract by December 31, 1922, appellant purchased in his own name the entire west half of the land, and paid individually $19,008.20 in·cash and executed his notes for the sum of $76,032.80 and does not show the payment of any of the notes, nor that appellee paid any of the cash consideration for the west half of the land. The making of this transaction by appellant in his own name did not deprive appellee as a partner of any rights she may have therein, nor prevent appellant, if he acted in good faith, from insisting upon appellee's paying her part of the consideration for the west half of the land, and acquiring a pro rata interest therein. Hence in order to have a settlement and division of the notes and cash paid by Mrs. Veal to appellant, an adjustment should be made of the rights of the parties in the west half of the land by an accounting and settlement of the partnership affairs.

"(3) Under the well established doctrine that one partner may not sue another in respect to matters growing out of partnership business without a settlement and accounting of the partnership affairs, it is our opinion that this assignment must be sustained. Danforth v. Levin, (Tex. Civ. App.) 156 S. W., 569; Merriwether v. Hardeman, 51 Texas, 436; Lockhart v. Lytle, 47 Texas, 452; 20 R. C. L. 194, Sec. 130; 21 A. L. R., notes, Page 21.

"(4) Appellee in her petition sets up sufficient facts to disclose a conversion by appellant of her alleged interest in the cash and notes received by him from Mrs. Veal on the east half of said 19,617.28 acres of land, but for a conversion one partner is not allowed to maintain a suit at law against the other partner; his only remedy being a suit at equity for an accounting. Snyder v. Slaughter, (Tex. Civ. App.) 208 S. W., 974; 21 A. L. R., Subdivision 8 of the annotations, page 121.

"Appellant urges numerous assignments of error to the admissibility of the testimony, the charge of the court, and the insufficiency of the evidence, none of which would be tenable as presented, if appellee had properly pleaded a suit for an accounting of the partnership affairs and asked therefor.

" 'The motion for rehearing is granted, the original opinion withdrawn, and the judgment of the trial court reversed and remanded.' "

"After motion for rehearing had been seasonably filed in said cause in this Court and overruled, an application for a writ of error was filed in the Honorable Supreme Court of Texas, by Mrs. Chipley, and the Supreme Court granted such application and referred the case to Section B of the Commission of Appeals for their investigation and decision. The Commission of Appeals, upon hearing the cause, reversed the judgment of this Court and affirmed the judgment of the District or Trial Court and such judgment of the Commission of Appeals was duly adopted by the Supreme Court. 292 S. W., 209–211.

"On the trial of this cause, involving that part of the transaction as to the west half of said land, the defendant pleaded the judgment of the District Court of Lubbock County in cause No. 2013, the disposition of the appeal of that cause in this Court, and the disposition thereof by the Commission of Appeals and the Supreme Court, and further pleaded:

" 'This defendant would further show and represent to the Court that at the November Term, 1925, of the District Court in and for Lubbock County, Texas, in a suit therein pending, being cause No. 2013 in said Court, the said Lora A. Chipley, plaintiff herein, and husband of H. D. Chipley, were plaintiffs and the said defendant, Morton J. Smith, W. S. Posey, O. L. Slaton, and the First National Bank in Lubbock, Texas, were defendants, all in their individual capacities mentioned, and for the same relief that the said plaintiffs ask here, being a suit for a part of the profit upon the Veal-Chipley contract, and said plaintiff recovered judgment upon and after a trial upon the merits and a verdict in their favor by a jury against the said defendant Morton J. Smith, for the sum of $11,788.00, and costs of suit, as by the record and proceedings thereof more fully appears, which said judgment was affirmed by the Supreme Court of the State of Texas, and the said Morton J. Smith has fully paid off and satisfied said judgment, as is shown by a copy of the plaintiff's petition in said cause attached hereto and marked "Exhibit A" and made a part hereof. The judgment of the

Trial Court is hereto attached and marked "Exhibit B" and made a part hereof and the judgment and opinion of the Supreme Court is hereto attached and marked "Exhibit C" and made a part hereof and the receipt of the said plaintiff, Lora A. Chipley, to the defendant for the payment of said judgment is hereto attached and made a part hereof and marked "Exhibit D."

" 'That in said cause No. 2013 in this said court, the plaintiff, Lora A. Chipley, repudiated the said agreement she is now suing on and which is set out in her petition herein and sought to and did stand upon her rights under the contract between the said Veals and H. D. Chipley by virtue of her being the only heir to and under the will the estate of R. Taylor Woodson, who claimed a one-fourth interest in said Veal-Chipley original contract, and that in said cause the said plaintiff Lora A. Chipley, disclaimed any interest in and to the lands now and here sued on in this cause of action, as is shown by her petition which is hereto attached, in said cause of action, and by her application for a writ of error and brief to the Supreme Court of Texas in her appeal in said cause No. 2013 above referred to, in the following particulars.'

"Defendants, as a part of their special plea, set out certain excerpts from the application for writ of error made on the other appeal and filed in the Supreme Court in cause No. 763-4734, wherein said appellees in this case, and plaintiffs in the writ of error application in that case, were estopped by judgment from claiming any interest in the west half of the land in controversy, and on the trial of this case in the District Court, the defendants in this case, seeking to sustain such plea in estoppel, introduced in evidence the following excerpts from said application for a writ of error.

" 'First Proposition.

" 'The judgment and holding of the Honorable Court of Civil Appeals that the purchase of the west half by the surviving partner "in his own name did not deprive the appellee as a partner of any right she may have therein nor prevent appellant, if he acted in good faith, from insisting upon the appellee paying her part of the consideration for the west half of the land and acquiring a pro rata interest therein" was error, plaintiff in error says, because the mere fact, as found by the Court of Civil Appeals that the "appellant purchased in his own name the entire west half of the land and paid individually $19,008.20, in cash and executed his notes for the sum of $76,032.80 and does not show the payment of any notes, nor that the appellee paid any of the cash consideration for the west

half of the land" does not deprive the deceased partner of any interest there, neither does it charge him with any liability, because, the plaintiff in error says, the purchase by the defendant in error in his own name with his own means made said west half his own property and likewise the losses, if any, his losses, and not the partnership's, in the absence of pleading and proof that the purchase was wrongfully made (that is, without the consent of the deceased partner), so as to create a constructive trust.

" 'Second Proposition.

" 'The judgment and holding of the Honorable Court of Civil Appeals that "in order to have a settlement and division of the notes and cash paid by Mrs. Veal to appellant, an adjustment should be made of the rights of the parties in the west half of the land by an account and settlement of the partnership affairs" was error, the plaintiff in error says, when there is nothing in the pleading or proof of the plaintiff or the defendant that the legal representative of the deceased partner was claiming any rights in the west half.

" 'Argument under First and Second Propositions.

" 'It is evident from the court's opinion that it considers the partnership affairs unsettled and to be settled as a result of its erroneous holding that the purchase by defendant in error of the west half "in his own name" and the payment individually of his cash and the execution of "his notes" made the purchase partnership property and the losses and expenses if any those of the partnership.

" 'We insist that the west half became the property of the individual partner and not of the partnership.

" 'It is not denied, but admitted, that the west half was purchased by the defendant in error with the consent of the deceased partner.

" 'If the plaintiff in error, or if the partnership, had furnished any of the money or notes with which to make the purchase, then there would be room for the contention that there was a resulting trust, but not so in the case stated. Or, if there was any contention that the purchase had been made contrary to agreement and in violation of good faith then there would be ground for the claim that there was a constructive trust. There is no contention that the purchase of the west half was made by the defendant without the plaintiff's consent. On the contrary, it is to be inferred that the plaintiff's consent was given.

" 'If the individual partner made the purchase in his own name and with his own means and notes, with the plaintiff's consent,

how can the appellate court say that the purchase was without the plaintiff's consent? If it was intended by all concerned that the purchase be made for the benefit of the individual partner, how can an appellant court assume the contrary? If the plaintiff and defendant are satisfied with the consummation of the deal, and have not complained in their pleadings that it was not satisfactorily closed, how can the appellate court hold to the contrary?

" 'The conclusion seems irresistible that the defendant himself became the owner in his own name, and with his own means of the west half with the plaintiff's consent. If so, the property is his and not partnership property; and the losses and liabilities, if any, are his and not the partnership's. Therefore, there are no losses or liabilities unsettled or to be settled for as to the west half between the plaintiff and defendant. They have all been settled and we challenge the defendant in error to produce an authority to the contrary.

" 'In line with the foregoing reasoning, we ask why the plaintiff's former husband and his partner could not settle the west half by the defendant in error purchasing same in his own name with his own means. If the defendant in error was willing to assume all the liabilities and take all the risks in order to get all the profits in the purchase of the west half, and the other partner was willing thereto, why wasn't the settlement a fair one, and who had the right to complain? The truth is, the matter was settled in that way and no one is complaining of the settlement.'

"On the trial in this case, the defendant also introduced in evidence the defendant's first amended original answer in cause No. 2013, which answer specifically denied the partnership between Morton J. Smith and R. Taylor Woodson, deceased husband of the plaintiff; also pleading want of consideration for the various contracts; the defendant's motion for rehearing by the defendant in error filed in said cause before the Commission of Appeals seeking a rehearing of the decision of the Court in which defendant prays for a rehearing upon the following, among other grounds:

" 'To the Honorable Supreme Court of the State of Texas:

" 'Now comes the defendant in error, Morton J. Smith, and moves the court to grant him a rehearing, and on such rehearing to set aside the judgment heretofore entered in this case on the 23rd day of February, 1927, and in lieu thereof enter judgment affirming the judgment of the Court of Civil Appeals. As ground for such rehearing the defendant in error shows the following:

" '1. This Court erred in the conclusion that the partnership venture, to-wit: the purchase and resale of 19,617 acres of land had been fully closed prior to the institution of this suit, and rendering judgment on this conclusion. The contrary conclusion is correct, to-wit: that the partnership venture had not been closed, and that only one-half of the land had been disposed of.

" 'Statement.

" 'As the defendant in error asserts that there was error both in the overruling of his general exception to plaintiff's petition, and in the refusal of the Trial Court to give his requested peremptory instruction, a statement of the pleadings and of the evidence together will make the situation clearer. We under this statement will refer to the pleadings and the evidence, making the statement, however, separately.

" 'As to the pleading: It is alleged that Mrs. Veal agreed to sell Chipley, and he agreed to buy *19,617.28 acres of land* at the price of $15.00 per acre for the east one-half, the terms of sale of the west one-half not being stated. That Chipley was given the right to sell the east one-half and when it was sold Mrs. Veal would transfer to him vendor's lien notes representing the excess over $15.00 per acre for which the land had been sold. The plaintiff's husband acquired an undivided one-fourth interest in this contract and as consideration therefor "agreed to assume one-fourth of the obligations of said contract and to work in the *resale* of the land and * * * should receive *one-fourth of all profits arising* from the handling and sale of the *19,617.28 acres* of land owned by the Veals; and * * * should pay one-fourth of all expenses and losses, if any, of the venture."

" 'That as a result of sale of the east one-half of the Veal land, profits accrued to the amount of $40,001.37, and Mrs. Veal transferred notes to that amount to the defendant Smith. That the defendant Smith refused to recognize the plaintiff had any interest in such contract. There is no *allegation as to what became of the west one-half of the land; no allegation of what the expenses of resale might have been; no allegation of any accounting or settlement.* (Tr. pp. 3 to 9.)

" 'As to the facts: The contract between Veal and Chipley was for the sale and purchase of 19,617.28 acres of land at $15.00 per acre for the east one-half, and $10.00 per acre for the west one-half. It was provided that prior to final consummation of the con-

tract Chipley could, under the terms provided, make sales of the east one-half of the land in separate tracts, and that Mrs. Veal would convey the land to purchasers produced by him, receiving the cash consideration, the vendor's lien notes being payable to her. Then follows this provision, which shows the absolute indivisibility of the contract:

" ' "That in the event said Chipley sells or pays for all of the east half of said land upon the above terms and *consummates this contract by paying for the west half* of said land upon the terms set out in paragraph 1 of this contract, then, and in *that event only* the said Minnie Slaughter Veal is to transfer without recourse to said Chipley consecutively numbered vendor's lien notes to be selected by her aggregating $4.00 per acre or all over $15.00 per acre for which said east half shall have been sold. * * * But in the event said Chipley fails to sell or purchase all of the east half of said land *and all of the west half* under the terms of this contract by the 31st day of December, 1922, *then he shall not be entitled to any interest in the notes or any part of the land sold herein and shall forfeit all his rights under this contract."* (S. F. pp. 1 to 3.)

" 'Smith and Woodson (plaintiff's husband), became the owners of this contract. In the assignment to Woodson, it, after referring to the agreement for the purchase of 19,617.28 acres of land in Cochran County, provided that the said Woodson should:

" ' "Assume one-fourth of the obligations of said contract and work with said Chipley in the resale of said property.

" ' "It is agreed by all parties hereto that said Woodson shall receive one-fourth of the profits from the handling of said land and the expenses and losses shall be borne in the same proportion."

" 'On December 31, 1922, the east half of the land having been sold under the Veal-Chipley contract, this contract was finally closed, at which time the west half of the land was conveyed to Morton J. Smith, Woodson's partner, who as consideration therefor paid $19,008.20 in cash, and executed notes for $76,032.80, being the consideration as stipulated in the Veal-Chipley contract. At this time Mrs. Veal's agent "figured up the profits coming from the sales of those lands on the east half and the amount of those profits was $40,001.37, of which $364.71 was paid in cash and the balance of $39,636.66 was paid in notes," which were delivered to Morton J. Smith with written transfer. (S. F. pp. 31–32.)

" 'There is no evidence as to what the expenses, if any, of the handling and resale of the land were. The contract provided that Chipley was "to pay the expenses of having the land surveyed and

platted and the expenses of furnishing his vendees abstracts of title to the separate tracts." The evidence indicates that the land was sold in small subdivisions and this circumstance suggests that there may have been considerable expense incurred in the matter of surveying and furnishing abstracts, in addition to any other expense that would naturally be incurred in the sale of a large body of land in small subdivisions. There is no evidence of a settlement or accounting; there is no evidence as to what became of the west half of the land after its conveyance to Smith under the Chipley-Veal contract.

" 'The evidence, therefore, exhibits this condition of the business of the joint undertaking: Assets: $39,636.66, Notes: $364.71 cash; and title to the west half of the 19,617.28 acres of land. Liabilities: $19,008.20 cash advanced by Smith, and notes for $76,032.80 executed by him when purchase contract was finally completed. No statement of expenses incurred or accounting or settlement of any character.

" '2. Plaintiff's petition herein was subject to the general demurrer, and the trial court and this court erred in not so holding, because: it appears therefrom that the suit was brought by the plaintiff as representative of a partner or joint adventurer against the other partner or adventurer, for the recovery of profits alleged to have accrued in the venture, and it affirmatively appears that the share of the profits sued for is the result of the handling of only a part of the subject matter of the undertaking, so that the plaintiffs show no right to maintain this suit without a general accounting of the partnership business, or allegations of the disposition and closing of the business as to the remaining part of the land.

" 'Statement.

" 'Same as under Subdivision 1 hereof.

" '3. The Appellant's requested peremptory instruction to the jury to find for him should have been given, and this court erred in not so holding, because: it appears from both the pleading and the evidence that the defendant and plaintiff's husband were partners, or joint adventurers in the purchase and resale of 19,617.28 acres of land, and that such partners were to share in the profits, losses and expenses of such transaction; it further appears that the east half of said land had been sold, and notes for $40,000.00 delivered to the defendant Smith, which would be profits on the sale of the east half of said land, provided the notes were collected, and there were no expenses in connection therewith; but it does not appear that the joint adventure or partnership had been closed by any

disposition of the west half of the land that would enable the Court to determine what might be the final profits of the undertaking.

" 'Statement.

" 'Same as under Sub-division 1 hereof.

" 'Argument.

" 'We accept as correct this statement of the law quoted by the Court as the basis of its decision:

" ' "The authorities are in quite general, although not full accord that, when the partnership is formed to carry out a single transaction or venture, the same is fully closed, and does not involve complicated accounts, one partner may maintain an action at law against his co-partner for his share of the profits or losses of the venture, without first having a formal accounting."

" 'We respectfully urge the Court to review the record with confidence that when it does so, it will reverse its conclusion that the case made by the pleading and the evidence brings the plaintiff within this rule.'

"The Commission of Appeals in the first case referred to, as No. 763–4734, in that court, held that the partnership having been formed to carry out a single transaction and that said transaction was fully closed, the plaintiff in that cause should recover as for conversion. 292 S. W., 209.

"In this case it appears from the evidence that Smith and Woodson were short of money and for the purpose of securing financial aid, they transferred to two other parties, to-wit: Posey and Slaton, certain interests in their contract as to the west half and such transfer is fully set out in the following contract:

" 'THE STATE OF TEXAS, COUNTY OF COCHRAN

" 'KNOW ALL MEN BY THESE PRESENTS:

" 'That I, Morton J. Smith, of Lubbock County, Texas, do hereby acknowledge that I hold the title to the following described tracts of land situated in Cochran County, Texas, to-wit: Labors Nos. nine, ten, and twenty-seven, in League No. 104; labors Nos. nine, ten and twenty-seven in League No. 103; and Labors No. nine in League No. 102 of the Jeff Davis County School lands; Labors Nos. one, two, three, four, five, six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, eighteen, nineteen, twenty, twenty-one, twenty-two, twenty-three, twenty-four, and twenty-five, in League No. 119, and Labors Nos. one, two, three, four, five, six, seven, eight, nine, ten, eleven, twelve, thirteen, four-

teen, fifteen, sixteen, seventeen, eighteen, nineteen, twenty, twenty-one, twenty-two, twenty-three, twenty-four, twenty-five in League No. 120 of the Know County School lands, containing an aggregate of Nine Thousand Five Hundred Four and one-tenth (9,504.1) acres, in trust for the following parties, and that each party owns an undivided interest as shown by the amount set opposite their respective names:

R. Taylor Woodson ................1/6
O. L. Slaton & W. S. Posey..........2/6
Morton J. Smith ...................3/6

" 'And we, the said Morton J. Smith, R. Taylor Woodson, O. L. Slaton and W. S. Posey, the owners of said land as above set out, do hereby agree that the title to same shall remain in the name of Morton J. Smith until sold, and that same shall be sold in Labors by said Morton J. Smith upon the prices and terms agreed upon by us. That all moneys and notes received from the sale of said lands shall be placed in the Lubbock State Bank of Lubbock, Texas, and held by said bank for the account of Smith, Slaton, Posey and Woodson; that as said land is sold and money received from the sale thereof, such money shall be applied, first, to the payment of the $2.00 per acre cash, with interest thereon at the rate of 8%, and after said sum of $2.00 per acre with 8% per annum interest thereon from this date has been paid, the balance of the proceeds from the sale of said land, including the notes, shall be owned by the parties hereto in accordance with their interest in said lands, to-wit: the said R. Taylor Woodson, 1/6; O. L. Slaton and W. S. Posey, 2/6; and Morton J. Smith, 3/6; and that such balance shall be prorated as the parties may agree upon.

" 'It is agreed and understood that this contract shall remain in full force and effect until all of said land is sold, and the above indebtedness of $2.00 per acre, with 8% per annum interest thereon is paid; and the death of either of the parties other than said Morton J. Smith, shall not terminate this agreement until said time.

" 'Witness our hands in triplicate originals, this 30th day of December, A.D., 1922.

(Signed) Morton J. Smith,
R. Taylor Woodson,
O. L. Slaton,—W. S. Posey.'

"Plaintiff's petition in this suit seeks a recovery under this contract for the profits of the partnership as to the west half of said land.

"It appearing from the record that the original interest of plaintiff and the sole interest of plaintiff was obtained from Mrs. Veal and husband under the original contract, and that at the time said suit No. 2013 was pending in the District Court of Lubbock County, Texas, and while said case was on appeal to this Court and when the application for writ of error was made to the Supreme Court, that the contract between R. Taylor Woodson, Morton J. Smith and Posey and Slaton had long since been duly executed and whatever rights the plaintiff in this case had were then in existence and it further appearing from the record that in the application for writ of error made to the Supreme Court in cause No. 763–4734, it was represented to the Supreme Court in said application and the plaintiff admitted that 'we insist that the west half became the property of the individual partner and not of the partnership,' * * * 'It is not denied, but admitted, that the west half was purchased by the defendant in error with the consent of the deceased partner,' * * * 'If it was intended by all concerned that the purchase be made for the benefit of the individual partner, how can an appellate court assume the contrary? If the plaintiff and defendant are satisfied with the consummation of the deal and have not complained in their pleadings that it was not specifically closed, how can an appellate court hold to the contrary? * * * 'The truth is the matter was settled in that way and no one is complaining of the settlement.' And it appearing in the case now before this Court that the plaintiff sues for her part of the profits as the widow of the deceased R. Taylor Woodson, arising from the contract involving the west half, we propound to Your Honors the following question:

"The disclaimer of interest in the west half as made in the application for writ of error so filed in the Supreme Court being totally inconsistent with the assertion of an interest in the west half which antedates the filing of said application, is the plaintiff, Mrs. Chipley, estopped thereby from now asserting any interest in the west half?"

The above certificate very fully, concisely and ably states the facts and issues of law involved in the question certified and we consider same a sufficient statement.

As shown by the certificate, the following one question is certified to this court:

"The disclaimer of interest in the west half as made in the application for the writ of error so filed in the Supreme Court being totally inconsistent with the assertion of an interest in the west half which antedates the filing of said application, is the plaintiff, Mrs.

Chipley, estopped thereby from asserting any interest in the west half?"

As we understand the issues involved in this appeal, they amount to simply this:

Originally Morton J. Smith and his associates undertook between September 3, 1921, and December 31, 1922, to sell a tract of about 19,600 acres of land in Cochran County, Texas, belonging to the Veals. It was to be sold for certain prices, and the entire tract must be sold by said last date, December 31, 1922. If so sold the profits above what Mrs. Veal was to receive belonged to these selling agents.

The record shows that the east half was sold first and before December 31, 1922, and that in order to comply with the original contract and sell all the land, including the west half by said date of December 31, 1922, Morton J. Smith bought in his own name the west one-half, paying $19,008.00 in cash and executing notes for the sum of $76,032.80. After Smith had purchased the west half Mrs. Chipley, formerly the wife of R. Taylor Woodson, deceased, sued Smith for Woodson's one-fourth of the profits arising from the sale of the half first sold, the east half. At the time the east half was sold the selling agents under the Veal contract were Morton J. Smith and R. Taylor Woodson. Smith owned three-fourths interest and Woodson a one-fourth interest.

Mrs. Chipley, surviving wife of R. Taylor Woodson, deceased, filed suit in the district court seeking recovery of the Woodson one-fourth interest in the profits arising from the sale of the east half of said land, and recovered a judgment for same, amounting to $11,788.00, including interest. This judgment was duly appealed from to the Court of Civil Appeals at Amarillo, which court on rehearing reversed the judgment of the District Court, holding that a general demurrer should have been sustained by the trial court to the plaintiff's petition. 287 S. W., 156. In other words, the Court of Civil Appeals held that one partner could not recover her part of the profits on the east half of the land when it was not shown that the west half had been sold. That is to say that it appearing that all the land being one venture and all rights arising primarily out of the original contract, there must be an accounting of the entire partnership affairs before profits arising out of a part of said partnership transactions could be recovered. Thus it is seen that at the time the first suit was filed to recover the profits arising from the sale of the east half, the west half was unsold, and no one knew whether the sale of the west half would show a profit or a loss. If the matter

was one venture, and the sale of the west half should show a loss, Mrs. Chipley's part of the profit in the east half would have to be charged with any loss which might be sustained in the sale of the west half. It was on this understanding that the Court of Civil Appeals held that since the west half was unsold the general demurrer should be sustained in the first suit, as there could be no profits under the venture as a whole until the west half was sold and the net profits ascertained. If the Court of Civil Appeals was correct in its conclusion of fact it was certainly correct in its conclusion of law.

With the record of said first case standing in this condition at the time the Court of Civil Appeals rendered its opinion and judgment, Mrs. Chipley prosecuted a writ of error to the Supreme Court, in which writ of error she directly, and without equivocation, pleaded and stated as a fact that she had no interest in the west one-half of the land; that the entire partnership had been closed; that the west one-half of said land had been sold to Smith personally, and that the latter took same individually, for better or for worse. She then particularly pleaded and stated in said application for said writ in this court that:

"In line with the foregoing reasoning, we ask why the plaintiff's former husband and his partner could not settle the west half by the defendant in error purchasing same in his own name with his own means. If the defendant in error was willing to assume all the liabilities and take all the risks in order to get all the profits in the purchase of the west half, and the other partner was willing thereto, why wasn't the settlement a fair one, and who had the right to complain? *The truth is, the matter was settled in that way and no one is complaining of the settlement."* (Italics ours.)

On the above statements and allegations, and other allegations and statements almost, if not equally, as strong, the Supreme Court granted a writ of error, and finally reversed the judgment of the Court of Civil Appeals and affirmed the judgment of the District Court. As further shown, after the Supreme Court granted the writ of error in the first case, it referred said case to Section B of the Commission, and the case was considered by the Commission, and said Commission recommended the judgment finally entered by the Supreme Court, basing its recommendation entirely and absolutely upon the conclusion induced by the allegations of Mrs. Chipley, that the partnership venture was closed, and that she had no interest in or claim to any profits, and was not liable for any losses

arising out of the sale of the west one-half of said land. The record shows conclusively that Mrs. Chipley made these statements in and to the Supreme Court, and said court, and the Commission, based their holding and conclusions solely and absolutely thereon.

We are therefore confronted with this one question: Can Mrs. Chipley invoke the jurisdiction of the Supreme Court to grant her relief, basing her grounds for relief on the plain and direct statement that the partnership had been wound up; and that she had, and claimed no interest in the profits, and was not liable for any losses arising out of the sale of the west one-half of said land; that there were no losses or liabilities to be settled; that same had already been settled; that Smith was entitled to all the profits, and liable for all the losses on said west half; and many other statements of the same nature, and thus rightfully or wrongfully, it being immaterial which, obtain a judgment in her favor in the Supreme Court, and then later institute and maintain another suit against the very same party on the very claim that she disclaimed any interest in in the first suit? We think that to state the question is to answer it.

To permit a party to invoke the exercise of a jurisdiction within the general powers of the Supreme Court, by making representations as to a given state of facts, and thus obtain an advantage over his adversary, and a judgment and decree favorable to him based on such representations, that he could not otherwise have obtained, and then while retaining all such advantages, assert in another cause the very matter disclaimed in the former suit, would be contrary to every principle of right, and will not be tolerated by this court.

It seems to be plead, and is contended by Mrs. Chipley in her argument that the admissions and disclaimers in the former case were made by her attorneys without her knowledge or consent, and that the attorneys did not know the facts when they filed such pleadings and made such admissions and disclaimers. Also, Mrs. Chipley complains because the Court of Civil Appeals does not include this matter in the certificate. Even though we give full faith to this pleading and accept it as true, still it could make no difference in the result here. Mrs. Chipley has accepted and retained the benefits of the transaction and is charged, as a matter of law, with its results. This would be true even if an erroneous judgment was entered. One cannot take advantage of an error of any court that has been induced or invited by him. Spence v. Bank, 5 S. W., 754, (Com. App.) In this connection we will say that we do not hold that the original judgment for Mrs. Chipley contained any error,

that is immaterial; right or wrong, she invited and induced the holding and judgment in her favor by the above mentioned statements and disclaimers and accepted the fruits and benefits thereof, and she will not now be permitted to assert in another cause of action against her same adversary, the very thing that she disclaimed in order to obtain the first judgment, when both causes of action are based primarily on the same original transaction.

It seems to be the contention of Mrs. Chipley that since the inconsistent statements were not make in the pleadings, there can be no estoppel, citing 10 R. C. L., p. 699. A complete answer to this is that the admissions and disclaimers were contained in the application for the writ, and said application is certainly a pleading in the Supreme Court. It is as essential to an entrance into the Supreme Court as the petition is in the trial court.

A further answer to the above contention is that the rule laid down in 10 R. C. L., page 699, supra, states that a party is not only bound by allegations and admissions in his pleadings, but by admissions or agreements on the facts. An agreement or statement as to the facts does not have to be a pleading at all. So whether such statements be regarded as made in pleadings or in mere statements or admissions of the facts, such declarations, under the rule laid down by the above authority, would be binding on Mrs. Chipley under the circumstances of this case.

Mrs. Chipley also contends that the statements, admissions and disclaimers here discussed were merely arguments on the law, and not the statement or admission of a fact. We think that Mrs. Chipley is correct in stating that under the law, statements and admissions to be binding must be upon facts, and not mere matters of argument as to the law. 10 R. C. L., p. 699. However, an examination of the statements made in the application for the writ shows that such statements, admissions, and disclaimers, quoted by the Court of Civil Appeals in the certificate, were undoubtedly made as statements of a fact, and not mere argument. If they were mere argument and not statements of facts, it would be difficult for us to imagine any purpose for them in the application for the writ. Furthermore, the application for the writ, after stating in substance a complete and absolute disclaimer of any interest in the west half, and a full settlement thereof, etc., then states, "The truth is, the matter was settled in that way and no one is complaining of the settlement."

Finally, it is contended by Mrs. Chipley that these former statements and disclaimers are not binding on her because not made in

the same action or proceeding. In other words, we understand that it is contended that in order to work an estoppel, the inconsistent statements must be made in a retrial of the same case, citing 10 R. C. L., p. 702.

We think that the facts shown by the certificate bring this case directly within the rule announced by the above authority, which rule is as follows:

"It may be laid down as a general rule that a party will not be allowed in a subsequent judicial proceeding to take a position in conflict with a position taken by him in a former judicial proceeding, where the latter position is to the prejudice of the adverse party, and the parties and the questions are the same."

In all essential elements within the meaning of the above rule, the suit at bar, and the former suit, are one and the same suit; both suits are between the same parties, and both are for profits arising out of the same primary transaction.

We recommend that the question certified be answered "Yes."

The opinion of the Commission of Appeals answering the certified questions is adopted and ordered certified.

*C. M. Cureton,* Chief Justice.