### LYONS v. PULLIN.
### No. 4456.

Court of Civil Appeals of Texas. El Paso.
May 2, 1946.

Rehearing Denied June 6, 1946.

H. W. Wallace, of Cuero, and Tom Smiley, of Karnes City, for appellant.

J. W. Ragsdale, of Victoria, and J. O. Faith, of Karnes City, for appellee.

SUTTON, Justice.

This is an appeal from the District Court of Karnes County. The suit is one of boundary. The trial on the facts was to a jury, and on a verdict favorable to the plaintiff judgment was entered in his favor, from which the defendant has appealed.

The disputed strip contains 82.8 acres of land and is approximately 1500 varas long (substantially east and west) and of a mean width of some 315 varas. It is described by plaintiff ` by metes and bounds, and claimed by him to be out of the A. J. Burris and the Henry ' Clarke original surveys. The defendant admits the description generally as correct, except he does not admit the corners are properly called for nor that it is out of the named original grants.

It is conceded the controlling issue is the correct location of the Southwest corner of the A. J. Burris. The original field notes for the Burris are as follows:

"Beginning at the West corner of a survey made for Peter Gass, a stake from which a mesquite mk. I bears S. 73 deg. W. 40 varas, a hackberry, mkd. V bears No. 56 degrees E. 70 varas.

"Thence S. 20 deg. W. with the line of D. Nicholson's survey, five hundred and ninety varas to a stake in the bed of West

Ojo, from which a mesquite mkd. V. bears S. 74½ deg. W. 42 varas, another mkd. N. bears S. 38½ deg. W. 71 varas.

"Thence S. 70 deg. E. at 166 varas crosses East Ojo, five hundred varas to a stake, the W. corner of H. Clark's labor, from which a mesquite mkd. V. bears N. 74 deg. E. 19 varas, another, marked B, bears N. 2½ deg. W. 23 varas.

"Thence N. 20 deg. E. at 400 varas crosses East branch five hundred and ninety varas to the South corner of said Gass' Survey, on the West boundary of Clark's labor, a stake from which a mesquite marked A, bears S. 52 deg. E. 128 varas, another, marked W, bears S. 31½ deg. E. 93 varas.

"Thence N. 70 deg. W, with the Gass' S. line, five hundred varas to the Beginning." (S.F. pp. 483, 484)

The patent to Burris is dated August 5, 1851.

The plaintiff claims the involved strip as a part of the lands he purchased and described as follows:

"Beginning at the N. W. corner of the Peter Goss 124 acres which is also the S.W. corner of the Wm. Guthrie ⅓ league a stake from whence a mesquite brs. N. 75 deg. W. 41 vrs;

"Thence S. 20 deg. W. at 1424½ vrs. pass said Peter Goss S. W. corner, in all 2039½ vrs to the S.W. corner of the S.W. corner of the A. J. Burris survey in the east edge of the Ojo de Agua creek from whence am old mes. brs. S. 38½ W. 71 vrs and an old mesquite bears S. 74½ deg. W. 42 varas;

"Thence S. 70 deg. E. at 172 vrs. Yates Creek 506 vrs. pass S.W. corner of Henry Clark labor in all 1506 vrs to the said Henry Clark's S. E. corner a mesquite 4 in. in dia. marked X bears N. 84 deg. E. 29¾ vrs;

"Thence N. 20 deg. E. 281 varas a stake;

"Thence N. 16¾ W. 406 vrs a stake from whence a mesquite 6 in. in dia. marked X bears N. 33 deg. E. 14.9 vrs and a mes. 6 in. in dia. marked X bears S. 41 deg. W. 16-1/10 varas;

"Thence N. 53⅔ deg. W. 552 varas to the S.W. corner of a tract of 220⅛ acres belonging to P. B. Lyons;

"Thence N. 74 deg. W. 387 varas to a post at the S.W. corner of 241⅛ acres belonging to A. B. Lyons;

"Thence following the west boundary of said 241⅛ acres N. 18 deg. E. 363 vrs N. 22¾ deg. E. 780 vrs to a post for corner;

"Thence N. 70 deg. W. 109⁹⁄₁₀ vrs to the west corner of said A. B. Lyons 241⅛ acres from whence a mes. 8 in. in dia. marked X bears N. 74 deg. E. 7¼ vrs and a mesquite mkd. X bears N. 4 deg. W. 23¼ varas;

"Thence N. 20 deg. E. 160.8 varas to a stake in the north boundary line of said Peter Goss survey from whence a L.O. mkd. X bears S. 39 deg. E. 46.1 varas;

"Thence N. 70 deg. W. 263.4 varas to the place of beginning." (S.F. pp. 461-462)

The field notes for the disputed strip are as follows:

"Beginning at a stake in the edge of Ojo de Agua Creek, set for the southwest corner of the A. J. Burris Survey, from which an old mesquite tree bears S. 38½° W. 71 varas and another old mesquite tree bears S. 74½° W. 43-7 varas;

"Thence S. 71° E. at 120 to 180 varas Yates Creek at 818 varas pass the northwest corner of the A. D. Willbern tract of land, in all fifteen hundred eight (1508) varas to a corner post at the southeast corner of the Henry Clark Survey and a corner of the H. K. Hardy Survey;

"Thence N. 20° E. 277 varas to a post and stake at the turn of the old Runge and Charco Road;

"Thence N. 16¾° W. 22 varas to a corner post;

"Thence N. 69¾° W. with a fence and north line of this tract of land, at 1075 varas Yates Creek, in all 1493 varas to a stake in the west line of the A. J. Burris Survey and east line of the Jas. G. White Survey;

"Thence S. 20° W. cross and re-cross Ojo de Agua Creek 328 varas to the place of BEGINNING, containing 82.8 acres of land, of which about 25.6 acres are out of

the A. J. Burris Survey and about 57.2 acres out of the Henry Clark Survey." (Tr. p. 3)

The defendant's concession to the correctness of these field notes so far as the area involved is concerned has been noted heretofore. The following plat will illustrate the situation involved in the suit:

The defendant has twelve points but has grouped them for the purpose of briefing them. As we understand them they involve the propositions that the Southwest corner of the Burris is located as a matter of law at the point where the call of the west line first enters the Ojo Creek, marked I on the above plat; that plaintiff's evidence is insufficient to locate the Southwest corner of the Burris at the point marked K on the plat 328 varas South from the point I, and where the west line touches the creek at the third intersection; that the court erred in failing to instruct the jury in connection with the first issues submitted to them, and in admitting in evidence certain testimony with respect to a vacancy acquired by the defendant.

Defendant's position that the Southwest corner of the Burris is fixed as a matter of law at the point I is based on the first call in the Burris field notes where it calls to run "S. 20 deg. W. with the line of the D. Nicholson's survey, five hundred and ninety varas to a stake in the bed of West Ojo * * *." It is asserted this is a locative call and must be construed to locate the corner at the point where the line first intersects the creek. We find most of the cases cited in support of this contention by the defendant to be cases wherein the course and distance calls either fail to reach the stream or other natural object called for, or extend beyond. They are cases in which the line, if prolonged would cross the creek or stream, or do cross the same, and not lines that run with the course of the stream, as is the case here and might cross it a number of times. The record here is the "Ojo" is a very crooked creek with short bends and curves in it. This is illustrated by the fact the west line of the Burris, as run by plaintiff's surveyors, intersected it three times in a distance of 328 varas. There is nothing contained in the call indicative of the intention of the original surveyor to locate the Southwest corner of the Burris in the bed of the Ojo where the line first intersects it and, therefore, make it locative. It merely calls for a point in the bed of the Ojo, 590 varas S. 20 deg. W. of the Gass corner. The call between the be-

ginning corner here and the creek, unless specially designated in such manner as to show the intention to make it locative, cannot be said to be such, and will not take precedence over course and distance. Jones v. Andrews, 72 Tex. 5, 9 S.W. 170, at page 174.

Of course, the point in the Ojo called for, when found, is locative of the corner, but we think it does not mean the point of the first intersection. Armstrong testified on cross-examination it is not uncommon for surveyors to cross even large streams and make no call for them.

This has been from the inception of this controversy the position of the defendant and his surveyor. The defendant acquired his property as a gift from his Grandmother in April, 1932. Plaintiff's grantors acquired the property owned by him, of which the disputed strip is asserted to be a part, from the same common owner, defendant's Grandmother, in November, 1939. The grantor was an aged woman, 93 years of age when she died in May 1944. She was represented by her son, father of the defendant, in the sale of the lands owned by plaintiff. He had the survey made to determine the south line before the sale was consummated, and represented it to be all right. We take it he was familiar with the field notes by which the land was sold and conveyed. It is a little significant that it did not develop how those field notes were made up for the purpose of the conveyance.

The west lines of the Gass and Burris is a straight line. D. E. Lyons, father of the defendant, and agent of his mother, the grantor, testifying for the defendant, testified he knew where the west line of the Gass and Burris is on the ground and that there has never been any dispute that he ever heard of (and he was born and raised on this farm) about the location of that line. He put his surveyor on the line; the surveyor checked it for course and ran down to where it intersected the Ojo first and checked for the bearings called for; found an old mesquite stump hanging in the bank of the Ojo, he was willing to accept as one of the bearings trees, and then laid out the south line ac-

cording to the calls in the Burris patent, which line is now claimed by the defendant, based upon this survey.

The evidence of the location of the Southwest corner of the Burris as claimed by the plaintiffs is not as full and complete and satisfactory as it might be, and as we think it might have easily been made, but we regard it as sufficient to support the finding of the jury. As heretofore indicated, the defendant proved by his father the location on the ground of the west line of the Gass and Burris is known and that there has never been any dispute about its location on the ground. This is an old settlement. The surveys in the area are from ninety to one hundred and more years old. There is a road along the northern end of the Gass tract. That extremity, we take it, as a part of the line is known on the ground. Surveyor Conrads, for the plaintiff, took the field notes of plaintiff's deeds and ran around plaintiff's lands, and as contended by defendant within itself proved nothing, but he unquestionably reached the northern terminus of the Gass west line, as called for in the field notes he was using. He took his course and ran the distances called for in the Gass and Burris field notes and ultimately found the point claimed by plaintiff and found by the jury to be the Southwest corner of the Burris. An iron pin driven there by another surveying crew was called to his attention. He checked and found two old mesquite trees that, according to his testimony, almost exactly fit the calls for the original bearings in the Burris field notes. As he put it, "When you find two trees to tally, that is good." He accepted the corner as identified and ran the south line as now claimed by plaintiff.

Another surveyor, witness for plaintiff, Armstrong, testified he surveyed the whole area for his employer, an oil company that had the oil leases on the lands thereabouts, and he found the corner now claimed by plaintiff. It was he and his crew who drove the iron pin later found and accepted by Conrads. Armstrong testified his crew had field notes to all the adjoining surveys in the area, in-

cluding the Hardy, the Henry Clark, the D. C. Lyons, Jr. (131 acres of the 155 acres of which were conveyed to the defendant by his Grandmother), for the purpose of locating all the lines in general and the west Burris in particular. He was especially interested in the location of the Burris west line and Southwest corner, he said, because from the field notes he was suspicious of the existence of a vacancy below the Burris. More will be said about the vacancy hereafter. He further testified the trees he found and accepted as the original bearings were two large mesquites 14 and 22 inches in diameter respectively. The 14 inch tree found was described in the field notes as a 4 inch tree, if he be correct in his belief they are the same. He could not find the V called for as the mark on the tree, but it had been marked. According to his testimony, course and distance took them into the vicinity of the point accepted. They found the trees and felt they had enough but desired to be sure of themselves and did other work. Of course, it is immaterial what led to the point if it can be identified as the corner. We think the evidence and circumstances in the record sufficient to support the verdict and finding of the jury. The record reflects further, we believe, if the point I be accepted plaintiff is short approximately 70 acres from the acreage of 254 called for in his deeds, and if point K be accepted the defendant has all the acreage attempted to be conveyed to him.

Special Issue No. 1 is as follows:

"Do you find from a preponderance of the evidence that the original southwest corner of the A. J. Burris Survey in Karnes County, Texas, is located at an iron peg situated in the bank of the Ojo de Agua Creek at the point identified by the witness Conrads?"

To this issue the defendant objected and excepted as follows:

"4. He objects to said Special Issue No. 1, because nowhere therein or in connection therewith, does the court instruct the jury that Southwest corner of the said Burris Survey mentioned in said Special Issue No. 1 is the original southwest corner thereof as

originally located on the ground by the original Surveyor who located and surveyed said A. J. Burris Grant.

"5. He objects to said Special Issue No. 1 because nowhere therein nor in connection therewith are the jury given any instructions as to the law which controls the construction of said grant, nor in locating same natural objects called for in the original grant control over course and distance, and in this connection defendant here now tenders to the court his request for such instructions." (Tr. p. 17)

These objections and exceptions were overruled, about which he complains.

Defendant complains also of the failure of the court to give his requested special charge in connection with Special Issue No. 1, to wit:

"You are instructed in connection with Special Issue No. 1 that you are to search for and follow as far as possible the footsteps of the surveyor who originally located the A. J. Burris Survey on the ground, and in this search you will be guided first, by natural objects such as streams and timber; second, by artificial objects such as fixed and established line of an adjoining survey, about which there is no dispute, and then by course and distance. It is a matter of no consequence which corner or line of the survey was first made and you will consider all of the evidence and follow the actual survey of the A. J. Burris grant as it was originally made on the ground by the original surveyor, and construct lines no further nor beyond where he left his footprints, and follow those lines and go to those corners which the evidence points to as being identified and established as they are called for in the original survey." (Tr. p. 18)

As heretofore stated, and as asserted by the parties to this suit, the issue in the case is the correct location of a point, to wit, the Southwest corner of the Burris Grant. The jury were called upon to locate that point, and are not called upon to locate a line or lines, nor to construct the Burris Grant. Issue No. 1 is not subject, we think, to the first objection copied above, because it is not involved nor ambiguous. It requires the jury to locate "the original corner of the A. J. Burris Survey" and it was unnecessary for the court to instruct them in the manner pointed out by the defendant, in said objection. The omission pointed out in the objection last copied is not error, nor was it error to refuse the instruction requested in connection therewith for the reason the same is not necessary to enable the jury to properly pass upon and make an answer to the issue, which is the requirement of Rule 277, Texas R.C.P. The purpose of the testimony in the case and the duty of the jury under the testimony was to locate and identify the Southwest corner of the Burris, from which the South line of the disputed strip, and claimed by plaintiff to be his South line, may be run in accordance with the calls in plaintiff's deed. Of course, the South line of the Burris is a segment of that line. In a proper case it might even be necessary to include in the charge the dignity of calls, and if we are correct in holding the first intersection is not a locative call then there are no locative calls involved here other than for the bearing trees for the corner, which renders the instruction unnecessary. Runkle v. Smith, 63 Tex.Civ.App. 549, 133 S.W. 745.

This brings us to a consideration of the questions presented under the claim of title made by the defendant under the ten years statute of limitation. An old road testified to in the record divides the disputed strip into two parts. One part lies generally east and the other west of the old road as we understand it. The court submitted no issue as to that portion lying east of the old road. The other portion was divided into two parts, one contained in the north field and the other lying outside the field along the two creeks, the Yates and the Ojo, and submitted the issues in Special Issues 2 and 3. The pleadings of the defendant embraced the disputed strip as a whole as described. The answers to each of these issues was adverse to the defendant. He complains the court erred in refusing to grant him a new trial on the grounds the answers are contrary to the evidence. The suit was filed June 20, 1944. A fence was built in the summer or early fall of 1939, along

the line claimed by the defendant. The defendant testified on cross examination that he at no time prior to the erection of the fence in 1939 claimed any lands other than that conveyed to him in his gift deed. It would be little less than incredible that he could claim against his grandmother who had been generous with him. Claim of title or claim of right is in all cases necessary. No matter how exclusive and hostile to the true owner the possession may be in appearance, it cannot be adverse unless accompanied by the intent on the part of the occupant to make it so. The naked possession unaccompanied with any claim of right will never constitute a bar. Where a party enters upon land and takes possession without a claim of right, his occupation is subservient to the paramount title, not adverse to it. It is nothing more than a trespass, and, no matter how long continued can never ripen into a title. Houston Oil Co. of Texas v. Stepney et al., Tex.Civ.App., 187 S.W. 1078, at page 1084, points (7-10), error refused.

Under the defendant's testimony there is ample support for the answers of the jury to issues 2 and 3, because they only had to believe his testimony when he testified he did not claim any lands involved in the suit prior to 1939 other than what his grandmother gave him. It is determined that the disputed strip is not a part of the original D. C. Lyons grant. Had it been there could have been no need to claim under the ten year statute but under his deed.

■ The defendant and other witnesses testified he cultivated a field of some 60 to 65 acres and that some 20 acres of it was out of the disputed strip and that he otherwise used and possessed the other portion of it. On the other hand, it is admitted that portion submitted in issue number 3 was in a common enclosure of the defendant and his grandmother until the fence was built in 1939. She continued in possession of her other lands, including that acquired by the plaintiff. It is true defendant ran livestock in the common enclosure, but that was not hostile to her possession and was insufficient to give title

by limitation. Under the evidence and the state of the pleadings in the case an instructed verdict, it is thought, would have been proper on the issue of limitation. Musgrove v. Foster Lumber Co., Tex.Civ. App., 89 S.W.2d 287, error dismissed, and cases cited; Marion County v. Sparks, TexCiv.App., 112 S.W.2d 798.

In a very similar case on the facts so far as the lands submitted are concerned it was held the evidence was sufficient to support the findings of the jury. Mosley v. Gulf Production Co., Tex.Civ.App., 111 S.W.2d 726, error dismissed.

■ The defendant further complains the court erred in admitting in evidence a patent issued to the defendant January 12, 1944, for 6.65 acres of land described by metes and bounds and having for its beginning corner the Southwest of the Burris as claimed by the plaintiff. The objections urged against the offer and admission of the patent, as well as the examination of the defendant by the plaintiff with respect thereto, were based on a provision of the statute, Art. 5421c, subsection (f) of Section 6, Vernon's Civil Statutes, and that the purchase was a compromise with the State. The defendant testified a representative of an oil concern operating in that area suggested the vacancy was there; that he had a 90 day preference right to purchase it, but if he didn't Bascom Giles, the Commissioner of the General Land Office, knew it was there and someone else might buy it. He further testified he submitted the matter to his attorney for examination and consideration and then signed and made the application to purchase, which contained the field notes of the patent. The statute requires, where there is no prior filing, that the application of the good faith claimant shall be accompanied by a report of a State licensed surveyor; field notes describing the lands, lines and corners, together with a plat and proof of his good faith claim. Defendant's application was accepted and the area sold and patented to him.

The provision of the law under which the objection was urged is as follows:

"The application by a good faith claimant shall not be used or considered, in any

way, as an admission on his part that a vacancy exists."

Under prior provisions of this statute the State had taken the position one who had made even an unsuccessful application to purchase or lease could not as between himself and the State subsequently assert the vacancy did not exist, and this contention was subsequently upheld. Stanolind Oil & Gas Co. et al., v. State, et al., 136 Tex. 5, 133 S.W.2d 767, at page 776. This decision by the Supreme Court reversed the Court of Civil Appeals decision, 114 S.W.2d 699. It may be the provision of the statute above was inserted because of such claims. The Court of Civil Appeals took the view the transaction was in the nature of a compromise and that an unsuccessful application would not cut him off from saying thereafter the vacancy did not exist, but said had the applicant been successful a different situation might be presented. When this testimony was offered it was offered as an admission and declaration against interest and not by way of estoppel. The plaintiff seems to suggest the defendant is estopped under the case of Smith v. Chipley, 118 Tex. 415, 16 S.W.2d 269. A similar holding is had in State v. Ohio Oil Co. et al., Tex.Civ.App., 173 S.W.2d 470 (Dismissed). We are not here called on to decide whether or not' there is an estoppel in this case, and we do not so decide. We are of the opinion the facts in this case do not show a compromise was entered into by the defendant, but to the contrary he voluntarily proposed to buy as vacant the land purchased by him and at a time when there was no controversy in existence, and after the line he now contends for had been run. He cannot be permitted to sign and make the written application he did and then say he did not understand it, under the facts here. We are also of the opinion the provision of the statute does not protect him against the evidence offered and received against him. The provision is to protect him and relieve him against a claim he is bound by his application if the existence of the vacancy he subsequently brought into question. A good faith claimant is authorized to make the application if a vacancy is claimed to exist, and is required to make it within 90 days after the Commissioner declares one to exist to protect his preference right. The provision merely saves him from being cut off from taking a contrary position in a controversy as to whether it does exist or not. We conclude the court did not err in admitting the evidence.

Finding no reversible error the judgment of the trial court is affirmed.