## SHAW v. WINDHAM.

(Court of Civil Appeals of Texas. Amarillo. Feb. 22, 1913. Rehearing Denied April 5, 1913.)

1. ADVERSE POSSESSION (§ 114*)—EVIDENCE— SUFFICIENCY.

Evidence held to support a finding that a defendant did not acquire title by adverse possession under the ten years' statute of limitations.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 682, 683, 685, 686; Dec. Dig. § 114.*]

2. APPEAL AND ERROR (§ 1011*)—FINDINGS— CONCLUSIVENESS.

A finding on conflicting evidence is binding on the court on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3983–3989; Dec. Dig. § 1011.*]

3. ADVERSE POSSESSION (§ 68*) — HOSTILE CLAIM—INTENTION TO CLAIM TITLE.

A possession, to be adverse, must be hostile to the true owner, and there must be a coincident intention to claim title; and, where one claimed only to the true line between his property and adjacent premises, there is no adverse holding except to the true line.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 387–393; Dec. Dig. § 68.*]

Appeal from District Court, Dickens County; Jo A. P. Dickson, Judge.

Action by C. G. Windham against E. B. Shaw. From a judgment for plaintiff, defendant appeals. Affirmed.

Glasgow & Kenan, of Seymour, and W. T. Daniel, of Stanton, for appellant. R. S. Holman and B. D. Glasgow, both of Spur, for appellee.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

HENDRICKS, J. This is an action in trespass to try title by the appellee, Windham, against the appellant, Shaw, for a section of school land, situated in Dickens county, Tex.; the appellant, Shaw, in his answer, disclaiming any interest in the land except about 125 acres, with reference to which he specially pleads the statute of limitation of ten years, and also pleads an agreed boundary between him and one J. R. Ballard, who was plaintiff's remote vendor and the first purchaser from the state.

The case was tried by the court without a jury, who found in favor of plaintiff and gave judgment accordingly, and also found the following facts, which we adopt as our conclusions of fact in the case:

"First. That the plaintiff, C. G. Windham, had title to the tract of land described by field notes in his original petition, and that said tract of land, by the agreement of the parties hereto, filed in this cause, is correctly located on the ground by the survey by G. M. Williams, State Surveyor, and that the field notes of said survey, as made by the said surveyor, G. M. Williams, are correctly set out in plaintiff's original petition, and that said survey is correctly located on the ground as sued for by plaintiff.

"Second. That defendant has in his possession, and had at the filing of this suit, and for two years prior thereto, 125 acres of land out of said survey sued for by plaintiff, said 125 acres of land being a strip off of the east side of said survey described in plaintiff's original petition, which 125 acres of land was inclosed by the defendant in his pasture, with other lands, and that the land lines affecting the land and survey sued for have been in an unsettled condition up to or three years preceding the filing of this suit, and that plaintiff proposed to the defendant to allow his said fence inclosing the 125 acres of land to stand as it was until said lines were settled, when said fence would be moved by them to the true line, which proposition was agreed to by defendant.

"Third. That there was no boundary line established by agreement or by acquiescence as claimed by the defendant, and that there was no agreement between plaintiff and his vendor, J. N. Ballard, and the defendant, as to where said line should be.

"Fourth. That the defendant has no claim of any kind to said land, except naked possession, having never paid taxes on same or exercised any act of ownership over same, except his possession as aforesaid.

"Fifth. That said sued for by plaintiff is a tract of school land of 640 acres, which stands in the name of C. G. Windham in the General Land Office, and plaintiff, C. G. Windham, now holds said land in subordination to the state of Texas, and one-fortieth of the purchase price has been paid to the state, and the balance of said purchase price being still owing to the state.

"Sixth. That the 125 acres claimed by the defendant in his answer is a part of the tract sued for by the plaintiff; defendant having disclaimed as to the balance of the land sued for by plaintiff.

"Seventh. That said land sued for by plaintiff, including the 125 acres claimed by defendant, was awarded to J. N. Ballard, by the state of Texas, as state school land in October, 1898, and by him deeded to W. B. Gates, and by W. B. Gates deeded to the plaintiff, C. G. Windham; that all interest and taxes on said land has been regularly paid by the plaintiff and his vendors; and that proof of three years occupancy on said land sued for has been made and filed in the General Land Office, as required by law.

"Eighth. That there has never been any suit filed by defendant or any one claiming to have the right to purchase said land as school land, or to cancel or set aside the award to said land made by the Commissioner of the General Land Office to J. N. Ballard, in October, 1898.

"Ninth. That the defendant claims said land as state school land and has never asserted any claim that is or was adverse to the plaintiff or his vendors, unless it was through an agreed boundary, as pleaded by him, and on this point the court finds that the evidence shows an agreement on the part of the defendant to move his said fence to the true boundary line as soon as same could be ascertained.

"Tenth. That the reasonable rental value of said land is 20 cents per acre per annum, and that the defendant has withheld said land, to wit, 125 acres, from plaintiff for two years next before the filing of this suit.

"Eleventh. That plaintiff by the evidence has established title to and his right to recover of the defendant all of said land sued for, including the 125 acres claimed by the defendant, unless the defendant is entitled to recover said 125 acres claimed by him by reason of an agreed boundary or under the statute of limitation (article 3343 of Sayles); and on these points the court finds that the evidence establishes that there was no agreed boundary line as claimed by the defendant in his answer, and that there was no adverse possession by him as against plaintiff and his vendors, and that plaintiff has established by the evidence his right to recover all of the land sued for by him, as described in his original petition. The court finds that defendant has had inclosed with other lands the 125 acres in controversy for more than ten years."

[1] First. The court's finding of fact antagonistic to the plea of the statute of limitation, ten years, is amply supported by the testimony. The plaintiff testified with reference to a discussion between them as to the land lines in question, as follows: "We said we would just let the fence stay where it was until the land lines were settled. I

said, 'All right, that is the thing to do.' He says, 'I do not know which way it is going.' He didn't just come out and say he would move his fence when it was done, but he said that we would not move the fence until it was settled. He said until we had the suit, and of course I thought that meant the same thing."

The following testimony, by the plaintiff, is indicated in another portion of the statement of facts: "Q. Had Mr. Shaw ever told you, prior to the time this suit was brought, he was willing to move his fence on the line when it was ascertained? A. Yes, sir; we talked about it once or twice. I told him there was no use to move until the thing was settled. I had moved some fence I had before, and then had to move it again, and there was nothing in that. I was willing to give him the use of the grass until the thing was settled." Plaintiff further testified that the defendant never claimed the land directly from him, but, on the other hand, had offered to buy the land inclosed in his pasture about four years prior to the trial; plaintiff informing him at that time that he did not want to cut a small strip off of his section, and would rather they would wait until the thing was settled, then move the fence to the line.

[2] With reference to the plea of agreed boundary, which the defendant alleged he had with Ballard, the first purchaser from the state, the latter on the witness stand, in effect, denied any such agreement; and, while the defendant Shaw denied the admissions and the conversations which the plaintiff testified about, the court, however, resolved all this in favor of the plaintiff, which is necessarily binding on us.

[3] Second. Consequently, considering the findings of the court, and regarding the evidence as sufficient to sustain them, upon the proposition of adverse possession, as Judge Williams expressed it in the case of Smith v. Jones, 103 Tex. 635, 132 S. W. 470, 31 L. R. A. (N. S.) 153, the possession of the defendant Shaw "did not therefore have that clear and unambiguous quality essential to an adverse possession, hostile to the claim of the true owner." As was expressed by the Supreme Court, through Judge Williams, in the case of Hand v. Swann, 1 Tex. Civ. App. 245, 21 S. W. 283: "There can be no adverse possession without a coincident intention to claim title. If the claim, in other words, is not up to the partition fence, as extended, but only to the true line, there would be no adverse holding of the new inclosure but only to the true dividing line." The cases referred to by us were on different facts, but the principles asserted are peculiarly applicable.

The defensive plea mentioned having been resolved against the defendant upon the facts by the trial court, in his consideration of the evidence, and plaintiff's title having been sufficiently proved, we conclude that it will be entirely unnecessary to pass upon any other legal questions arising in the case, and affirm the judgment, which is accordingly so ordered.

Affirmed.