* Writ of error dismissed for want of jurisdiction November 18, 1925.
This is an appeal from the judgment of the district court awarding D. H. Waterstreet, appellee herein, recovery of a strip of land against J. W. Hopkins, Sam Allen, and C. G. Campbell, appellants herein. Appellee was plaintiff, and appellants were defendants, in the court below, and they will be so designated in this opinion. Said Allen and Campbell were tenants of Hopkins. They asserted no separate rights, but merely joined him in defending against plaintiff's claim, and need not be further referred to herein.
The evidence in this case shows without controversy that plaintiff and defendant Hopkins were at the time of the trial of this suit, and had been for more than ten years prior thereto, adjoining landowners; that plaintiff owned a 41-acre tract lying west of Nolan river, also called Nolan creek, and defendant a larger tract lying east of the same; that defendant formerly owned a part of the land in controversy now owned by plaintiff, and that his deed conveying the same called for the center of Nolan river as the east boundary of the tract conveyed thereby; that he purchased the tract owned by him east of said river in 1904; that plaintiff acquired the tract owned by him in 1912; that according to the field notes in plaintiff's and defendant's said deeds, respectively, the center of said river was the dividing line between their respective tracts; that it was imprudent to build and impossible to maintain a fence on the dividing line in the center of the channel of said river, because at times the water therein amounted to a flood, overflowed its banks, and was sufficient to wash away any fence so built; that the only practical way to build and maintain a division fence was to build it on one side or the other of the channel of said river, and a sufficient distance therefrom not to be washed away by the flood waters thereof; that such a fence was built or rebuilt by plaintiff on his side of the river; that less than 10 years had elapsed from the time of the building or rebuilding of such fence when this suit was filed; that defendant participated to some extent in the building of said fence; that said fence extended from north to south along the entire east side of plaintiff's tract of land, connecting on the north with the south fence of a lane extending along the north line of both plaintiff's and defendant's tracts of land, and connecting on the south with fencing of defendant; that the strip of land in controversy in this case is from 15 to 150 feet wide, and extends along the entire east side of plaintiff's land, a distance of 950 varas, and lies between plaintiff's said fence and the center of the channel of said river. The defendant's right, if any, to said strip of land, is based solely upon a claim of such peaceable and adverse possession and use and enjoyment thereof as is required to make the 10-year statute of limitation effective to vest title.
Plaintiff's immediate vendor was one Cornelius. He testified that there was an old fence along the east side of said 41-acre tract, but that it was not sufficient to turn stock, and that defendant's stock bothered him; that said fence, or a part of it, was right on the river bank; that a conversation occurred between him and defendant about building a fence between them; that he suggested that defendant build the fence along the east bank of the river on defendant's side thereof; that defendant said the stock law was in force on that side of the river, and if witness' stock came over there he could impound them; that witness was required to keep his stock off of defendant's land and on his own side of the river; that the stock law was not in force on the west side, and if defendant's stock crossed the river to that side witness could not impound them, nor complain; that *Page 304 
witness thereupon rebuilt said fence, moving the same back from the river onto level ground, but placing the same as close to the river as he could with die regard for its safety in case of overflow.
Plaintiff testified that while a fence had formerly run along the east side of said tract of land somewhere near where he built his fence, such fence, when he purchased said tract of land, was entirely gone in places, leaving only an occasional wire tacked to a tree; that he built a new fence approximately on the line of the old fence; that defendant offered to contribute some labor and material to the building of said fence, and that he permitted him to do so in a neighborly spirit; that amicable relations continued between him and defendant, not only during the building of the fence, but for many years thereafter, and until he desired to remove said fence; that he, shortly after his purchase of said land, cleared the same of briers and underbrush to the bank of the creek on his side of the river; that he sold hackberry trees off the disputed strip, and that the purchaser dug them out of the ground and carried them away; that he budded and grafted pecan trees on said strip and gathered pecans therefrom; that he also, at least one time before this controversy arose, cut said fence and fenced a stock chute across said strip, so the stock in his pasture could go to and fro from the same to the channel of the river for water; that defendant never told him he was claiming said strip of land, and that he never knew of any claim thereto on the part of the defendant, until just prior to the filing of this suit.
Defendant denied that any discussion occurred between him and said Cornelius about building said fence, or about which side of the river the same should be built upon, or about the effect of the stock law on the situation. He claimed that the fence in question was sufficient to turn stock at the time plaintiff rebuilt the same; that he and plaintiff voluntarily joined in building said fence as a division fence between them, and that he bore his share of the burden of building; that he never knew of plaintiff's selling trees from said strip, nor of his grafting or budding pecan trees thereon, or gathering pecans therefrom. He testified that he did not bother plaintiff when he cut the fence and made the stock chute to the water, because he thought plaintiff needed the water; that he let him alone, and that plaintiff, when he got through watering his stock, put the fence back himself; that he never told plaintiff that he was claiming this strip of land, and that he never told any one else that he was claiming the same, but that he did intend to claim it all the time. Defendant used his land on the east side of said river as pasture, and his stock, when the river was fordable, could cross the same and graze on this strip of land, and he testified that he had frequently gathered pecans thereon. He also testified that he cut some dead pecan trees off this strip and used them for firewood. No other user of said strip by said defendant was shown.
Both plaintiff and defendant introduced testimony tending to corroborate their respective contentions. The court submitted the case to a jury on special issues. The only issue submitted to the jury, which involved defendant's claim to the strip of land in controversy, is here given, followed by the answer of the jury thereto, as follows:
"Did the defendant, J. W. Hopkins, ever assert against the plaintiff title to the lands in controversy? If so, when?
"Answer: Yes; at the time plaintiff filed suit."
The court, in connection with the issues submitted, charged the jury as follows:
"You are instructed that adverse possession under the statute of limitation of 10 years, as provided by the law of this state, is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another."
The court rendered judgment on the verdict of the jury in favor of plaintiff for the recovery of the land sued for. Defendant presents the case for review by this appeal.
Defendant Hopkins objected to the submission of the issue above quoted, and here contends that the court erred in submitting the same, by the following proposition:
"Because it was immaterial and irrelevant as to whether or not the defendant Hopkins ever asserted title to the land against the plaintiff;
it being ordinarily understood that to assert title means to orally claimtitle, and defendant's right under the pleadings, and his claim of title by and under the 10-year statute of limitation, depended only upon his occupying the same under a claim of right under such circumstances and conditions as would put the plaintiff upon notice that his occupancy was adverse to plaintiff's title or right to the possession and use of said land." (Italics defendant's.)
Defendant did not request the submission of any special issues. He did, however, request the court to give, and the court did give, the jury the following charge:
"You are instructed as a part of the law of this case that the expression `under a claim of right' does not mean that the defendant J. W. Hopkins should make any claim of ownership of the land, otherwise than by a visible, hostile, exclusive, and continuous appropriation of the land. And if you believe that the defendant actually and visibly appropriated the land in controversy, and commenced and continued to use and enjoy the possession thereof for a period of 10 years before the institution of this suit, then you are instructed that the defendant, J. W. Hopkins, acquired title to said land, and, that, in answering the special issues *Page 305 
herein, you will be governed by the law as herein given you."
In order to constitute defendant's possession and user adverse, he must have claimed the land as his own as against the plaintiff, or, in other words, in hostility to plaintiff's claim thereto. Gillespie v. Jones,26 Tex. 343, 346. In the absence of knowledge of such claim on the part of the owner, the adverse possession must be so open and notorious that such knowledge on his part will be presumed. Houston Oil Co. v. Stepney (Tex.Civ.App.) 187 S.W. 1078, 1084, par. 11 (writ refused). Defendant did not contend that he ever asserted a verbal claim to the land in controversy, either to plaintiff or any one else. He relied on his alleged open, visible, and exclusive possession as giving plaintiff notice of his hostile claim. The court, at his request, charged the jury that such an assertion of claim to the land was sufficient. If any ambiguity existed in the issue as submitted by reason of the use of the word "asserted," instead of the word "claimed," such ambiguity was removed by the giving of said requested charge. With such charge before them, we do not see how the jury could have been misled by the use in said issue of the word "asserted" in the connection in which it was used. There is no complaint in defendant's brief that the verdict of the jury is without support in the evidence, or that it is against the preponderance thereof.
We have carefully considered the other propositions presented by defendants in their brief, and have reached the conclusion that none of them show reversible error.
The judgment of the trial court is affirmed.