**BRADSHAW et al. v. McDONALD.**

No. 11987.

Court of Civil Appeals of Texas. Galveston.

May 20, 1948.

Rehearing Denied June 10, 1948.

Norman M. West and J. Avery Rush, both of Houston (Baker, Botts, Andrews & Parish, of Houston, of counsel), for appellants.

Joel W. Cook and Bailey P. Loftin, both of Houston, for appellee.

CODY, Justice.

The petition on which appellee, as plaintiff, went to trial contained a count in trespass to try title, but the purpose for which he brought the suit was to establish that an absolute general warranty deed which he had executed to the grantees named therein on September 9, 1939, was a mortgage. The following facts are not disputed: That on and prior to the date of said deed, appellee owned the record title to the property described therein (the same being four lots located in South Houston Gardens No. 6, a subdivision in Harris County,) but that appellee owned said property subject to a deed of trust lien which secured a promissory note of appellee to the Home Owners Loan Corporation in the original sum of $2730, payable on an amortization plan in monthly installments of $21.90. At the time appellee executed the deed, he was delinquent on the note to the extent of $181.39. So far as is here material, the aforesaid deed recited that appellee, a single man, "in consideration of the sum of Ten and no/100 ($10.00) Dollars and other good and valuable consideration to me in hand paid by J. C. Bradshaw and wife, Effie Bradshaw, the receipt of which is hereby acknowledged, and the further consideration of the assumption by the said J. C. Bradshaw and wife, Effie Bradshaw, of, and their promise to pay the present unpaid balance of principal and interest on that one certain promissory note dated January 24, 1934, executed by W. R. McDonald (appellee) * * *."

The following facts were also determined to be true: That after the deed was delivered to appellant, J. C. Bradshaw, he paid the stated delinquent payments to the HOLC on September 18, 1939. That on September 30, 1939, J. C. Bradshaw executed an agreement directly assuming with the HOLC the payment of appellee's note originally for the sum of $2730. That the deed was filed for record on January 14, 1942. That on December 27, 1943, Bradshaw paid off said note without waiting for it to mature in monthly payments, and HOLC released its deed of trust lien.

Appellee instituted this suit on April 23, 1946 against J. C. Bradshaw and his minor daughter, Effie Mae Bradshaw, who succeeded to her mother's interest in the lots in question, and against the guardian of the estate of said minor. J. C. Bradshaw's wife had married him about 1920 and they lived together as husband and wife until her death. J. C. Bradshaw's wife was also appellee's sister. We will now make a more detailed statement of the allegations of appellee's petition.

After alleging the facts as to his delinquency on the promissory note, appellee alleged that immediately prior to the date of the deed, which was September 9, 1939, appellant, J. C. Bradshaw in person and acting through his wife, who was appellee's sister, "offered and agreed to lend to this plaintiff (appellee) the amount necessary to satisfy the delinquent payments upon said indebtedness and to lend and advance to this plaintiff such other and further amounts that might become owing upon said indebtedness to said Home Owners Loan Corporation until such time as plaintiff became physically able to repair the house on said premises and to rent the same. Upon this plaintiff's agreement to repay all amounts so lent and advanced by said defendant, and upon the condition that this plaintiff execute to said defendant a mortgage upon the land and premises hereinabove described to secure the repayment thereof:" Appellee then went on to allege among other things, that it was agreed that the mortgage would not be placed of record. That the rent should be collected by Bradshaw to be applied upon the indebtedness of appellee to Bradshaw. That appellee was fraudulently led to believe that the deed of September 9, 1939 was in form as well as substance, a

mortgage. That if the instrument so executed by appellee was a deed, appellee was induced by appellants, Bradshaw and his wife, to believe same was a mortgage and appellants are estopped to claim said instrument is a conveyance, and appellee further alleged that he is entitled to judgment cancelling and annulling the purported deed and is entitled to a reformation thereof to show the true agreement made by the parties and is entitled to judgment. That such instrument, if of any effect at all, was a mortgage. By his prayer, appellee prayed for title and possession of the lots in question and for judgment cancelling and annulling the purported deed and for judgment declaring said deed, if not annulled, a mortgage only.

Appellants answered by pleas of general denial, not guilty, limitation, the statute of fraud, Vernon's Ann.Civ.St. Article 3995. In the alternative, appellants prayed to recover for improvements made in good faith and for sums paid out in good faith for insurance and taxes. By cross-action appellants sued appellee in trespass to try title.

Appellee requested no special issues on forgery or on fraud and the court, after overruling appellants' motion for directed verdict, submitted the case to the jury on three special issues. In answer to Special Issues Nos. 1 and 3 (on which there was no dispute in the evidence) the jury answered: (1) That appellee signed and acknowledged the instrument dated September 9, 1939. (3) That the total sums of money paid out by J. C. Bradshaw, plus six per cent interest, amounted to $4403.47.

Special Issue No. 2 reads: "Do you find from a preponderance of the evidence that plaintiff signed such instrument based on an agreement with Effie Bradshaw on her own behalf and as agent for J. C. Bradshaw that such would be held as security for monies paid out and to be paid out by J. C. Bradshaw for the account of plaintiff?" To which the jury answered "Yes." The court defined "security" in the charge as meaning a right granted to a creditor over the property of the debtor for the security of his debt, giving the creditors the power of having the property seized and sold in default of payment; that security

is only incidental to a debt and cannot exist in the absence of a debt; that a security for a debt cannot be created by mere intention of the parties, but must be given as security for the payment of a definite legal obligation.

After verdict, appellants moved for judgment notwithstanding the answer to Special Issue No. 2. Appellants' motions for directed verdict and for judgment notwithstanding the verdict, were based on a contention that the deed of September 9, 1939, contained a contractual consideration and could not be varied or contradicted by parol in the absence of fraud, accident or mistake. The court rendered judgment on the verdict that plaintiff recover title and possession of the land and appellants recover $2078.14 (being the amount of the jury's answer to Special Issue No. 3, less stipulated credits). Appellants predicate their appeal upon twelve points, the first one being in substance:

(1) Judgment should have been rendered for appellants because the deed of September 9, 1939, recited a contractual consideration which was performed by the grantees and there is no evidence of fraud, accident or mistake in connection with the transaction.

The parol evidence rule presents no obstacles to proving by parol or extraneous evidence that a deed in absolute terms was in fact intended as a mortgage. Austin v. Austin, 143 Tex. 29, 35, 182 S.W.2d 355 and cases there cited. In Eckford v. Berry, 87 Tex. 415, 421, 422, 28 S.W. 937, 938, it was said: "The true rule is that parol evidence is not admissible to contradict or vary the terms of the written instrument, except in cases where equity sets aside general rule of evidence for the purpose of allowing the parties to show that the real transaction was the securing of a debt * * * in order that the equity of redemption may be allowed at the instance of the debtor, and foreclosed at the instance of the creditor."

In order to establish that a purported deed is a mortgage, it is necessary to show that the grantor and grantee therein sustain a relationship to each other as debtor and creditor. Appellee makes no

contention that preceding the execution of the instrument, he was, indebted to J. C. Bradshaw, nor that he became indebted to J. C. Bradshaw by reason of money advanced or paid to appellee by Bradshaw at the time the instrument was executed. It was appellee's position, that under the agreement which he alleged as between himself and Bradshaw, that he became indebted to Bradshaw in the sums advanced and paid on the HOLC indebtedness. Taking appellee's allegations as true, J. C. Bradshaw would have had the right to recover against appellee on a judgment for the amount of the payments he made to HOLC on the promissory note, and to have foreclosed his mortgage, and if the land did not bring the amount of said advancements at foreclosure sale, Bradshaw would have been entitled to a deficiency judgment against appellee personally. In Bemrod v. Heinzelman, Tex.Civ.App., 263 S.W. 951, 953, which is similar to the case at bar in all material respects, the court said: "According to testimony of the defendants * * * plaintiff offered to pay off the outstanding indebtedness against the land if the defendants would give him a deed of trust on the property to secure him for the money to be so advanced, and the deed was executed for that purpose and with that understanding. * * * We think the obligation of the plaintiff to the defendants, thus arising, was sufficient to serve as a basis for the contention that the instrument was intended as a mortgage. 27 Cyc.P. 1008." In the case at bar, by the terms of the deed, J. C. Bradshaw obligated himself to appellee to pay the indebtedness of appellee to HOLC and, as stated, it was appellee's contention that the consideration therefor was his obligation to repay any payments so made by Bradshaw.

We have carefully considered Kidd v. Young, 144 Tex. 322, 325, 190 S. W.2d 65, 66, and the cases there cited. It has undoubtedly been settled by the Supreme Court that when the consideration expressed in a deed is contractual, parol evidence (in the absence of fraud, accident or mistake) is not admissible to contradict or vary the consideration so expressed as the result would be to change or defeat the legal operation and the effect of the instrument. Id. It was further stated in the Kidd case "The rule stated applies to any attempt to impose on the grantee a parol trust in respect to the property conveyed." The basis of the rule appears to be estoppel. Kahn v. Kahn, 94 Tex. 114, 58 S.W. 825. It is not necessary for us to inquire why equity would hold that the operative portion of a contract would estop a grantor in a deed from engrafting a parol trust on the property conveyed and why at the same time equity will not make the same holding with respect to a grantor in a deed absolute so as to prevent the grantor from showing the deed was intended as a mortgage. The reason, however, generally given is that public policy is to protect debtors in necessitous circumstances. See Eckford v. Berry, supra. We overrule appellant's first point.

We believe that all the facts and circumstances on the whole case were sufficient to warrant the jury in finding in response to proper special issues that the deed in question was intended as a mortgage and overrule appellants' points relative thereto. But we have concluded that the court erred in submitting special issue No. 2 to the jury because, as submitted, (1) the issue assumed the agency of Effie Bradshaw to make the agreement though the fact so assumed was a controverted issue. (2) The issue assumed the existence of an agreement made between appellee and Effie Bradshaw as agent of J. C. Bradshaw and merely asked whether the act of signing the instrument of September 9, 1939 was based on such assumed agreement. (3) The issue was duplicitous.

Because of such error of which appellants seasonably complained and properly called same to the attention of the court, the case must be reversed and remanded for a new trial. We are doubtful if special issue No. 2 as submitted was raised by appellee's petition, but any such doubt can be removed upon a new trial.

The judgment of the trial court is reversed and the cause is remanded for a new trial.

Justice GRAVES agrees to the reversal.