Lena WICKS et al., Appellants,

v.

Nathan LANGFORD et al., Appellees.

No. 3420.

Court of Civil Appeals of Texas.

Eastland.

Jan. 9, 1959.

George T. Thomas, Big Spring, for appellants.

Grover Cunningham, Jr., Big Spring, for appellees.

GRISSOM, Chief Justice.

Nathan Langford and others, as trustees for the A.M.E. Church of Big Spring, sued James Manning, Lena Wicks, Elnora Dossie Johnson and husband, Willie Johnson, for title and possession of Lot Number One in Block F of the Moore Addition to Big Spring. Plaintiffs' petition consisted of three counts, the first was in trespass to try title; the second alleged a contract between the plaintiffs and James Manning and Lena Manning Wicks for the exchange of a lot owned by said church for all of Lot One and that the conveyance by James Manning and Lena Manning Wicks to the trustees of said church of only the west 50 feet, instead of all of said Lot One, was the result of a mutual mistake. In the third count plaintiffs sought title and possession of all of Lot One by virtue of the ten year statute of limitation. Vernon's Ann.Civ.St. art. 5510. The court instructed a verdict for the defendants as to the first and second counts, but, based on a jury finding of ten year limitation, judgment was rendered

awarding all of Lot One to plaintiffs. All defendants except James Manning, against whom a default judgment was rendered, have appealed.

Appellants contend the judgment should be reversed because of the admission of testimony of verbal negotiations for the exchange of lots and testimony as to plans of the church for future development of Lot One. Appellants also say that the judgment should be reversed because there is no evidence of the requisites of title by virtue of the ten year limitation statute and because the evidence thereof is insufficient. The evidence relative to verbal negotiations for the exchange by the Mannings of all of Lot One for another lot was ad-limited purpose of showing a mutual mistake and cannot be considered in support of the judgment rendered on count three. In order that the facts may be more readily understood, we attach hereto a copy of a survey of Lot One. Plaintiffs introduced a deed from James and Lena Manning, dated November 9, 1942, acknowledged on said date by James Manning and by his wife, Lena Manning, now Wicks, on February 15, 1943, and filed for record on February 22. (Lena Manning is the same person as the defendant Lena Wicks.) It recites that the Mannings in consideration of $10 paid them by the trustees of said A.M.E. Church of Big Spring conveyed to said trustees a tract described as "Being the West 50 feet Eastward and Westward by 140 feet Northward and Southward of Lot No. one (1) in Block 'F' Moore Addition to the Town of Big Spring Howard County, Texas." It is undisputed that when said deed was executed James Manning was one of the trustees of said church. There is no evidence when, if ever, he ceased to be a trustee. Appellants admit plaintiffs have title to all of said lots south of the north line of the church located on said lot and, regardless of what disposition should otherwise be made of the judgment, we could affirm the judgment as to that portion if said line were definitely established by the record. Appellants claim all of said lot north of said line that lies more than 50 feet east of the west line of Lot One. In discussing the evidence as to a claim to and use of said lot we shall pay particular at-

tention only to that portion. The evidence shows that in 1945 there were 4″ x 4″ posts in the ground adjacent to the north and east lines of said lot. Except for gaps at the northwest and northeast corners and on the east line near the church, the posts were placed approximately ten feet apart and were about 24 inches high. All the testimony comes from Nathan Langford and Charlie Merritt, trustees, and Reverend Birt, pastor of said church. Reverend Birt testified that he had been pastor since 1951, or nearly seven years; that the "fence" was there when he became pastor; that a shack, described by Merritt as 20 feet by 6 or 8 feet, was moved on the disputed area, near where Elnora Dossie Johnson's house, marked C on the plat, now stands, in 1951 or 1952 and it was moved off about 1955 when they acquired a cafeteria, which is shown on the plat as house A. He testified that since he had been pastor they have kept the lot clean to the "fence". He said that the year he became pastor, 1951 or 1952, Lena Manning, now the appellant Lena Wicks, told him she owned the land in controversy and asked him if she could sell it and he told her, in substance, that he guessed she could. The chief witness for the trustees was Nathan Langford, who has been a trustee for about 17 years. He said he was a trustee when the church began negotiations for the lots with James Manning; that James Manning was then a member and a trustee of said church and owned Lot One. Langford testified that Manning said he would give Lot One for the lot on which the church and parsonage were then located and that Langford said "all right" and the other trustees approved it. The record does not show whether the church conveyed its lot to the Mannings or explain why the Mannings executed a deed to only the west 50 feet of Lot One. The trustees testified that the church records prior to 1945 could not be found and that the records since that time disclosed no relevant facts. The evidence relative to said negotiations was admitted with the express limitation that it might be consider-

ed only in connection with count one, in which mutual mistake in the conveyance of only the west 50 feet of Lot One was alleged. An instructed verdict for defendant was given on this count. Said testimony cannot be considered in support of the judgment rendered awarding the trustees title and possession of all of lot one by virtue of the ten year statute of limitation, alleged in count three. Merritt testified that at one time there was a wire across the top of the posts but he said the wire was not still there and he did not know how long it remained. There is no evidence as to when the posts were placed along the north and east sides of Lot One, nor why, or by whom, they were placed there. It is undisputed that they did not constitute an enclosure. It was not a fence. Automobiles could, and sometimes did, pass between the posts and park on the lot. There were no posts at the northwest corner, the northeast corner or near the church on the east line. Langford testified that they planned to extend the church northward if it should be added to and that every spring they cut the weeds and cleaned off the lot to the posts. Merritt testified, "Sometimes we parked on there." To summarize plaintiffs' testimony, in addition to the posts, it simply consists of the fact that a shack about 20 by 7 feet was moved on the lot and used as a place where the members sold soda water and ice cream and that it was moved off after about five or six years; that people attending church parked on the disputed area and that they cleaned the entire lot and used it occasionally for picnics. We have concluded that the competent evidence pertinent to the count submitted and on which the judgment was rendered is insufficient to sustain a judgment awarding plaintiffs the northeast portion of the lot.

■■■ James Manning was a trustee of the church when he and his wife executed a deed to the west 50 feet of Lot One. The pastor testified that when he came to the church nearly seven years before the trial that Lena Wicks told him she owned

the property in controversy and asked him if she could sell it and he, in substance, told her she could. So far as the record discloses, James Manning may have continued in his capacity as a trustee of the church. It requires no stretch of the imagination to conclude that, being a trustee as well as members of said church, he and his wife permitted their brethren to use the part of the lot they still owned to park while attending services, sell ice cream and soda pop and for children's picnics and that they did not have notice that James' fellow trustees were claiming title thereto from the use disclosed. The evidence does not show exclusive possession by plaintiffs nor notice to defendants. In Riddle v. Vandiver, Tex.Civ.App., 225 S.W.2d 460, 462, the court quoted the following with approval:

"To be effective as a means of acquiring title, the possession of an adverse claimant must be exclusive of the true owner. The owner must be wholly excluded from possession by claimant. Any sort of joint or common possession by claimant and the owner * * * prevents the possession of claimant from having the requisite quality of exclusiveness. In these circumstances, the law referred the possession to the person having the legal title."

In Southwestern Lumber Co. of New Jersey v. Allison, Com., 276 S.W. 418, our Supreme Court approved a holding that possession to be adverse must be exclusive and that it is not adverse if the land is used jointly by the true owner and those claiming by limitation. The possession by limitation claimants must wholly exclude the owners. W. T. Carter & Bro. v. Holmes, 131 Tex. 365, 113 S.W.2d 1225; Johnican v. Tomasino, Tex.Civ.App., 248 S.W.2d 207 (R.N.R.E.); Humphreys v. Gribble, Tex. Civ.App., 227 S.W.2d 235 (R.N.R.E.); Duncan v. Adams, Tex.Civ.App., 210 S.W. 2d 180, 189, affirmed 147 Tex. 332, 215 S.W.2d 599, 605; Freedman v. Bonner, 40 S.W. 47; 170 A.L.R. 846; Richards v.

Smith, 67 Tex. 610, 4 S.W. 571; 2 Tex. Jur. 92 and West Production Co. v. Kahanek, 132 Tex. 153, 121 S.W.2d 328, 331.

In Harris v. Wood County Cotton Oil Company, Tex.Civ.App., 222 S.W.2d 331, 334 (R.N.R.E.), there was a comparable issue as to a portion of a lot used by a gin's customers. The customers used half of a lot not owned by the gin company to reach the gin and as a place to park. It was held that such use did not constitute the actual and visible appropriation of the land required by Article 5515.

Appellants' point that the evidence is insufficient to support the verdict and judgment is sustained. The judgment is reversed and the cause remanded.