**Walter GREEN et ux., Appellants,**

v.

**V. A. GOMEZ et ux., Appellees.**

**No. 3611.**

Court of Civil Appeals of Texas.

Eastland.

Feb. 24, 1961.

Rehearing Denied April 21, 1961.

Thomas & Smith, Big Spring, for appellants.

Wayne Basden, Big Spring, for appellees.

WALTER, Justice.

Walter Green and his wife, Louisa Green, filed suit against V. A. Gomez and his wife, Belle Gomez, seeking to cancel one deed from the Greens to V. A. Gomez, dated May 15, 1955, and one deed from V. A. Gomez to his wife, Belle Gomez, dated November 2, 1956. The court granted Gomez's motion for an instructed verdict and entered a judgment that the plaintiffs Green take nothing.

The Greens have appealed from such judgment contending the court erred in entering a judgment that they take nothing because there was some evidence of probative value that the Greens and Gomez intended that the deed from the Greens to Gomez should be considered as a mortgage given as security for a debt and not as a conveyance.

An issue of fact was raised if, discarding all adverse evidence, and giving credit to all evidence favorable to the Greens, and indulging every legitimate conclusion favorable to the Greens which might have been drawn from the facts proved, a jury might have found in their favor. Olds v. Traylor, Tex.Civ.App., 180 S.W.2d 511 (Writ. Ref.); 41–B Tex.Jur. 226, § 191.

Walter Green testified substantially as follows: that in December, 1943, he purchased the property in dispute from V. A. Gomez for a total consideration of $1,500, paying $400 cash and executing a vendor's lien note for $1,100, payable in monthly installments; that after he purchased the property he erected a tile building on said land at a cost of $3,000, another building that cost him $1,800 and added a room that cost him $500; that he had resided on said property with his wife and son since he purchased it from Gomez; that on said property his wife operates a beauty shop and he has a barbecue cafe; that he cannot read nor write, but can write his name; that on May 18, 1955, he and his wife executed a note for $850 payable to Gomez; that contemporaneously with the execution and delivery of the $850 note he and his wife delivered to Gomez a deed to the property in dispute that recited a consideration of $850; that Gomez instructed him to go to Mr. Thomas' office *and Mr. Thomas would fix up a mortgage; that he went to Mr. Thomas' office and he fixed it up;* (emphasis ours.) that he did not know whether he was signing a mortgage or a deed; that said property was worth $10,000 in 1955; that he did not intend to sell Gomez his property when he delivered the deed. *When asked, "What did you intend to do, if anything?", he answered, "Well, I was just—he was loaning me the money on it. What I would call—he called it a mortgage."* (Emphasis ours.) When asked, "What was the reason, if any, that you gave him this deed, Walter?", he answered, "For—he—holding it—he claimed he was holding the deed for—until we paid him the $850.00."; that he has paid $400 on the $850 note; that he

owns and claims said property and was living on said property at the time he executed the deed and the note and has lived there ever since.

Louisa Green testified the property was worth $10,000 and that she did not intend to sell the place to Gomez when she signed the deed. A real estate agent testified said property was worth $4,245 in 1955.

V. A. Gomez testified substantially as follows: that he purchased the property in dispute from the Greens for $850 and thinks he paid them off in folding money and cash; that said property was worth $3,000 or $3,-500 on May 18, 1955; that on or about May 18, 1955, Green needed money to open a cafe in one of Gomez's buildings and that he let him had $850 and Green made a note for it; that he knew the Greens occupied said property as their home. It is apparent from V. A. Gomez's testimony that he knew said property was the Green's homestead.

■ The controlling question in this case is with what intent did Green and his wife execute said deed and with what intent did Gomez receive it. If said general warranty deed was delivered by the Greens to Gomez and Gomez received it with the intention and understanding that it should only be a security for a debt, the jury would have been justified in finding that the parties intended for said deed to be a mortgage. Davis v. Brewster, 59 Tex. 93. We find from all the facts and circumstances in evidence there was some evidence of probative value that the Greens intended the deed to be a mortgage and that Gomez accepted it as such. Young v. Blain, Tex.Com.App., 245 S.W. 65.

The Greens pleaded that Belle Gomez was not a bona fide purchaser and did not pay a valuable consideration for such property. They also pleaded that she had notice that her husband did not have title to such property. Mrs. Gomez testified substantially as follows: that she did not remember that her husband deeded her the Green property; that she did not remember wheth-

er her husband ever told her that he had put the Green property in her name; that she knew that the Green property was in her name, but did not remember when she first found out that such property was in her name; that she did not remember if her husband gave her the property or if she paid him for it. She was asked three times if she were claiming the property and the first time she answered, "Let me think awhile.", the second time she answered, "I didn't say that.", and the third time she answered, "Well, yes."; that she had never seen the deed and that her husband managed their affairs.

■ Article 4619, Vernon's Ann.Civ.St., in effect makes the husband the agent of his wife in so far as the management, control and disposition of the community property is concerned. Knowledge of the husband as to matters concerning community property would, therefore, be knowledge of the wife. We hold that Mrs. Gomez was charged with knowledge of the title of the Greens' property because her husband's knowledge was imputable to her.

Judgment is reversed and the cause is remanded.

### On Motion for Rehearing

In his motion for rehearing Gomez asserts that regardless of whether there was sufficient evidence in favor of the Greens to establish a mortgage, the Greens did not offer to pay the prior indebtedness owing on the property to Gomez, or tender the same, and, therefore, an instructed verdict for Gomez was proper. In his motion for an instructed verdict, Gomez asserted the Greens "failed to make tender of payment of the amount and/or amounts due under said mortgage". The Greens had filed suit not only for cancellation of the deeds, but to remove cloud from their title. Gomez filed a cross-action in the form of a statutory action of trespass to try title and did not plead his title specially. The Greens pleaded not guilty.

Gomez contends he loaned Green $850 when Green started operating the El Patio. Gomez was asked,

"Q. Was that on an old note? A. The deed I gave them when I sold it to them, that is what I sold it to them, $1,500.00.

"Q. Have you alleged any foreclosure of that? A. No.

"Q. That old note? A. No, sir." Gomez takes the position the note is not secured by a lien on the Greens' homestead and Green admits, in effect, he still owes $450 on the new note.

 Gomez' pleadings and evidence show that he was claiming title and possession of the property and that he refused to recognize the note and deed as an indebtedness and mortgage against the Green homestead. Green's testimony that he had paid only $400 on the note demonstrated his willingness to pay the balance. We hold that Gomez has demonstrated his unwillingness to accept the money due on the note as a discharge of the debt, and his pleadings and evidence show conclusively that he is asserting absolute ownership of the property. In the case of Metro-Goldwyn-Mayer Distributing Corp. v. Cocke, Tex.Civ.App., 41 S.W.2d 645 (Writ Ref.), the appellant contended and the court held that "the law does not require any party to do a vain or useless thing and that a formal tender is never required when it appears that if it had been made, it would not have been received." In the case of Gulf Pipe Line Co. v. Nearen, 135 Tex. 50, 138 S.W.2d 1065, 1068, the court said: "In 40 Tex.Juris. page 840, 841, it is said: 'Since payment of a debt implies capacity and willingness on the part of the creditor to accept an unconditional offer of payment in full discharge, formal tender of payment is excused where the creditor has signified that he is unwilling to accept the money or thing due as a discharge of the debt and the refusal of the creditor to accept the amount offered makes it unnecessary for the debtor to produce the medium of payment.'" In the case of Soell v. Haddon, 85 Tex. 182, 19

S.W. 1087, 1089, our Supreme Court said: "It was not necessary that the plaintiff should tender the amount of the debt as a condition to the bringing of the suit. The defendant asserted a claim of absolute ownership in the property, which has been held to dispense with the necessity of a tender of the money before suit. Luckett v. Townsend, 3 Tex. 119; Watts v. Johnson, 4 Tex. [311] 317."

Under the pleadings and evidence, we hold the evidence presented a fact question which should have been submitted to the jury.

Gomez' motion for rehearing is overruled.