**Bert MILLER, Appellant,**

v.

**T. D. FITZPATRICK, Appellee.**

**No. 288.**

Court of Civil Appeals of Texas.

Corpus Christi.

July 13, 1967.

Rehearing Denied Aug. 31, 1967.

Harry F. Maddin, of Cullen, Mallette, Maddin, Edwards & Williams, Victoria, for appellant.

Gerald T. Bissett, Victoria, for appellee.

## OPINION

GREEN, Chief Justice.

This is a trespass to try title suit filed on August 31, 1965 by appellee Fitzpatrick against appellant Miller for title and possession of a wedge shaped piece of land located within a platted, recorded subdivision. Appellee relied upon record title; appellant's claim is based upon the ten year statute of limitations. At the close of the trial before the court without a jury judgment was rendered sustaining the contentions of appellee. At the request of appellant, findings of fact and conclusions of law were filed.

By general warranty deed dated June 25, 1953, Wayne F. Christiansen and ·wife Mary Louise Christiansen, stipulated to be

the common source of title, conveyed to Donald M. Mills and wife Lot No. 2, Block No. 1, of the subdivision of Emerald Hills, as same is shown by the established map and plat thereof duly recorded in the Deed Records of Victoria County, Texas, Vol. 269, Page 12. This was improved property, and the Christiansens had been occupying the residence on it as their home. After the sale the Christiansens moved to a residence immediately across Jade Drive in front of this property. The Mills moved onto said Lot 2, and resided there until they sold the property to appellant Bert Miller and his wife by general warranty deed dated October 31, 1956. This deed used the same description of the property as did the conveyance to Mills, i. e. by lot and block number with reference to the recorded map and plat of the subdivision and with no description of metes and bounds. The Millers thereupon moved on to the property, and have continued to occupy it as their home to the date of trial.

By deed dated January 11, 1965, the Christiansens conveyed to appellee T. D. Fitzpatrick and his wife Lot No. 1, Block No. 1, of Emerald Hills Subdivision, describing the lot solely by reference to map and plat of said subdivision recorded in the county clerk records of Victoria County. Lot No. 1 adjoins Lot No. 2 lying to the east of appellant's lot.

We incorporate herein a rough drawing of Lots 1 and 2, Block 1 of Emerald Hills Subdivision in order to show the location of the area in litigation, which is represented by the triangle formed by the lines A B, B C, and A C, fronting 50 feet on Jade Drive.

The undisputed evidence establishes, and it was found as a fact by the trial court, that the true boundary between Lot 1 and Lot 2 is the line A B, that all of the land in dispute lies within Lot 1 as shown by the established map and plat of the subdivision referred to in the deeds mentioned above, and that appellee Fitzpatrick holds the record title thereto.

When the Christiansens lived in the home on Lot 2, they owned Lot 1 and Lot 2. All

of Lot 1 except the triangular wedge in litigation, i. e. all east of the line B C, was unimproved land, covered by heavy brush and weeds. Christiansen had cleared that portion of Lot 1 west of line B C of brush, planted it in grass, and kept the grass' mowed along with the front yard portion of Lot 2. When Mills purchased Lot 2, he believed that the eastern edge extended to the line of brush, which is represented on the plat supra as line B C. From June 25, 1953, when he moved onto said lot, until October 31, 1956, he continued to consider this area as his, and to mow the grass, cut the weeds, and keep the area in a neat and tidy condition, and to make the same use of this land as the Christiansens had made, and as he did of the portion of his front yard to which he had actual record title. From October 31, 1956, the date of the sale to appellant, to the date the suit was filed, August 31, 1965, appellant Miller went into possession of this triangular area along with the lot bought by him, believing that it was a portion of his purchase, and he fertilized and mowed the grass, cut the weeds, planted flowers and shrubs, and installed, in 1961, an underground drainage or irrigating system, and kept the property neat and tidy and made similar use of it as he did of the front yard of the property actually a part of Lot 2 to which he had record title.

Since appellant had not had ten years possession of the property when the suit was filed,[1] it was necessary, if he establish limitation title, that he tack his possession onto the possession of his predecessor Mills. Since Mills' claim to the land in controversy, if any, began when he went into possession on June 25, 1953, the limitation title, *if any*, matured against Christiansen prior to the sale of Lot 1 to appellee on January 11, 1965. It is appellant's contention that their title to the disputed area was perfected in

1963, over 18 months before appellee bought Lot 1 and that hence any lack of knowledge or notice to appellee of appellant's claim becomes immaterial.

"When the record owner has notice of the adverse claim, the limitation statute commences to run against him. Its operation is not affected by his conveyance of the property, and his grantee may not successfully contend there was a lack of notice." 2 Tex.Jur.2d 193, Adverse Possession, § 92.

Appellant during the trial offered evidence from his witness Mills that prior to and at the time Mills purchased this property, Mrs. Christiansen showed him and his wife the property and told them that the tree line was the property line, and that it was Mills' understanding that the property they were buying included the area in controversy. Although the record does not show any objection by appellee to any of this testimony except that concerning Mills' understanding,[2] and the deposition of Mills does appear in the record as having been introduced in evidence without objection except as above stated, the court in his conclusions of law excluded all of the testimony concerning pointing out of boundary lines, ruling same inadmissible. Appellant in his seventh point of error contends that such evidence was admissible particularly to show the extent of the claim of appellant and his predecessor in title, and that Christiansen, the record owner of Lot 1 at the time, had actual knowledge as well as constructive knowledge of the adverse claim. Appellant's seventh point reads:

"The Court erred in holding as a matter of law that the representations of the parties' common grantor to Appellant's predecessor in title were inadmissible, such statements as to boundary being clearly admissible."

1. Appellant went into possession October 31, 1956; the suit was filed August 31, 1965.

2. The statement of facts does show that several conferences between counsel and

the court were had off the record, but does not show what occurred at such conferences.

Since this is not a boundary suit, and the Christiansens are not parties, and appellant's claim is based strictly on adverse possession for a period of ten years, appellant does not contend that such representations of Mrs. Christiansen would have the effect of creating a boundary different from the true line, or passing any title to the disputed area, or that the evidence was admissible on any such theory. Appellant's contention, as stated in his brief and on oral argument, "is that in reliance on the representations of the record owners as to the extent of what was being sold, Appellant and his predecessor went into possession of the disputed tract, claimed it and did acts evidencing ownership. Appellant contends that his title matured ten (10) years after the representations were made; not at the time of the representations."

■ It is undisputed, and the court so found, that the land in question was the community property of the Christiansens at the time they executed the deed to Mills. The husband is the statutory manager of the community and is the agent of the wife in the management, control and disposition of the community. Art. 4615, Vernon's Ann.Tex.St.; Green v. Gomez, Tex.Civ. App., 348 S.W.2d 185, n. w. h. Except in situations covered by such article, and in the case of purchase by the wife of necessities for herself and children, (Walling v. Hannig, 73 Tex. 580, 11 S.W. 547), notice or knowledge of one spouse is not notice or knowledge to the other unless actual agency exists. Carl v. Settegast, Tex.Com. App., 237 S.W. 238, opinion adopted by Sup. Ct.; Home Owners' Loan Corporation v. Cilley, Tex.Civ.App., 125 S.W.2d 313, wr. ref.; M. A. Cooper & Co. v. Sawyer, 31 Tex.Civ.App. 620, 73 S.W. 992, n. w. h.; Western Union Tel. Co. v. Moseley, 28 Tex. Civ.App. 562, 67 S.W. 1059, n. w. h. Neither the wife nor the husband is the general agent of the other. Henderson v. Jimmerson, Tex.Civ.App., 234 S.W.2d 710, n. w. h.; Rankin v. Kerrville Bus Co., Tex.Civ.App., 115 S.W.2d 997, n. w. h. It is error to assume that the wife is the agent of the husband. Bradshaw v. McDonald, Tex.Civ. App., 211 S.W.2d 797, 800, affd. 147 Tex. 455, 216 S.W.2d 972. Since there is no evidence that Mrs. Christiansen was acting as the agent of her husband in pointing out any boundary lines to Mills, she was acting without authority from him, and he, as manager of the community, was in no way bound; and such offered testimony would not constitute any evidence to him of any adverse claims of Mills to the disputed property. There was no evidence that Christiansen had any actual notice of any adverse claim to the property.

■ But even if said evidence were admissible on the issue of an adverse hostile claim of Mills against Christiansen, it would not affect the decision in the case, and any error of the trial court in regard thereto would be immaterial. The evidence shows, and the court found, that both Mills and appellant went into possession under their deed to Lot 2, with the mistaken belief that the eastern line extended to the brush line. There was no showing that Mills intended to hold any of Christiansen's land adversely or hostile to him; he intended to secure the property deeded to him, but not to take any property not within his deed. In mowing the grass, and keeping this small tract clean he was doing only what Christiansen had been doing before Mills purchased the property. The record fully supports the finding of the court (No. 25) that the claims made to the land in controversy by both Mills and Miller were made under the assumption that said land was conveyed to them by their deeds, and that there is no evidence of any hostile or adverse claim or use made to or on said land from any other reason; and also supports the court's conclusion (No. 5) that the mowing of lawn, cutting of weeds, caring for hedges, plants and shrubs on the disputed land which was never enclosed by fence, never improved by the construction of buildings or structures thereon, and never visibly occupied or appropriated by defendant or his predecessor in title, evidenced a casual and incomplete use of the

premises which was not of such unequivocal notoriety as to create the presumption that the record owner of the land knew of such claim. On the subject of his claim, Mills testified as follows:

"Q * * * So, really, to sum up, when you bought the land, you understood you were buying it to that line?

A That's what I understood.

Q And you continued to use it in the same manner as it had been used before by the Christiansens?

A Yes.

Q All right. Now, you said you had been claiming this property. I want you to tell me what you mean by saying you were claiming the property in dispute since the date of your deed in 1953.

A Well, I was simply claiming it because I thought that was where the line was; I thought it was my property or I wouldn't have been mowing it.

Q You thought this particular piece of land was covered by your deed?

A Yes.

Q And you were claiming it to the extent of what you thought you had bought there.

A Yes.

Q Did you ever know or were you ever informed until finally this lawsuit, that this particular land was not covered by your deed?

A No. * * *"

As stated in Orsborn v. Deep Rock Oil Corp., 153 Tex. 281, 267 S.W.2d 781:

" * * * Looking to all of the evidence and accepting as true all of the evidence offered by petitioner, including petitioner's testimony, we find that there is want-

ing evidence of probative value tending to prove that petitioner and his father or either of them had adverse possession of the disputed tract as defined in Article 5515, that is, 'actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another.' "

In further discussion of the term "claim of right" the Supreme Court, in Orsborn, says:

"Petitioner had the burden of proving the elements of adverse possession, including 'a claim of right'. In Moore v. Wooten, Tex.Com.App., 280 S.W. 742, 748, it is said that 'One who seeks to establish title to land by virtue of the statutes of limitation assumes the burden of proof upon this issue, [3] *and this proof must be clear and satisfactory.*' See also Urschel v. Garcia, Tex.Civ.App., 164 S.W.2d 804, 805.

" 'No matter how exclusive and hostile to the true owner the possession may be in appearance, it cannot be adverse unless accompanied by the intent on the part of the occupant to make it so. The naked possession unaccompanied with any claim of right will never constitute a bar.' Houston Oil Co. v. Stepney, Tex.Civ. App., 187 S.W. 1078, 1084, application for writ of error refused. See also Hopkins v. Waterstreet, Tex.Civ.App., 275 S.W. 303; Mosley v. Gulf Production Co., Tex. Civ.App., 111 S.W. 726; Shaw v. Windham, Tex.Civ.App., 155 S.W. 636, application for writ of error refused; Lyons v. Pullin, Tex.Civ.App., 197 S.W. 2d 494, 501.

"Claim of right must be manifested by declaration or by open or visible act. *If there is no verbal assertion of claim to the land brought to the knowledge of the landowner, the adverse possession must be so open and notorious and manifested by such open or visible act or acts*

3. Emphasis added by us.

*that knowledge on the part of the owner will be presumed.* Hopkins v. Waterstreet, 275 S.W. 303" [3]

The opinion in Orsborn, supra, quotes from Harmon v. Overton Refining Co., 130 Tex. 365, 372, 109 S.W.2d 457, 460, 110 S.W.2d 555, as follows:

"It is well settled that when one enters into possession of land under a deed his possession is referable to the deed, and is presumed to be in conformity with it, and is confined to the limits thereof. Therefore, in order for a vendee to acquire title by adverse possession of additional or adjoining land outside the limits of the boundaries in his conveyance, he must have actual possession of such additional land of such character as of itself will give notice of an exclusive adverse possession and mature into title after the statutory period. * * *"

Authorities cited in the opinion are, among others, West Production Co. v. Kahanek, 132 Tex. 153, 158, 121 S.W.2d 328, 331; De Las Fuentes v. MacDonell, 85 Tex. 132, 20 S.W. 43; Mhoon v. Cain, 77 Tex. 316, 14 S.W. 24; Vineyard v. Brundrett, 17 Tex.Civ.App. 147, 42 S.W. 232, writ ref.; McKee v. Stewart, 139 Tex. 260, 162 S.W.2d 948. See also Southern Pine Lumber Company v. Hart, 161 Tex. 357, 340 S.W.2d 775; Allen v. Sharp, Tex.Civ.App., 233 S.W.2d 485, writ refused; McCall v. Grogan-Cochran Lumber Company, 143 Tex. 490, 186 S.W.2d 677; White v. Daniel, Tex.Civ.App., 391 S.W.2d 176, writ ref. n. r. e.; Cook v. Winter, Tex.Civ.App., 207 S.W.2d 145, writ ref. n. r. e.; Bemrod v. Wright, Tex.Civ.App., 273 S.W. 938; City of Houston v. Darland, Tex.Civ.App., 264 S.W.2d 783, writ ref. n. r. e.

■ There is no evidence that Mills or appellant ever manifested any claim of right to the disputed area by any declaration or verbal assertion of such claim. The acts of mowing the grass, planting flowers, and keeping the land in dispute in the condition in which his grantor kept it did not constitute the character of possession as of itself gave notice of an exclusive adverse possession hostile to the claims of all others. City of Dallas v. Etheridge, 152 Tex. 9, 253 S.W.2d 640; Surkey v. Qua, Tex.Civ.App., 173 S.W.2d 230, writ dism. w. m.; City of Houston v. Darland, Tex.Civ.App., supra; Wicks v. Langford, Tex.Civ.App., 320 S.W.2d 707, n. w. h.

Since appellant's possession did not cover a full ten year period prior to the filing of this suit, it was necessary for him to tie in his claim with an adverse, hostile possession of the disputed area by Mills. This, as shown above, he failed to do, since the record sustains the trial court's findings and conclusion that Mills had no such possession openly adverse and hostile to the claims of others, and did not at any time prior to the filing of this suit verbally assert any claim to the disputed area brought to the attention of the land owner.

■ Furthermore, the trial court's finding of fact No. 26 that there was no transfer, either by parol or by written instrument by Mills to appellant of any of the land in controversy, and his conclusion that under the state of the record there could be no tacking of Mills' possession to appellant's possession so as to constitute the required ten years of adverse possession are supported by the evidence. Both Mills and appellant testified that at the time Mills sold Lot 2 to appellant, Mills and Mrs. Mills showed appellant the lot and stated that the property line extended to the brush, so that the disputed area would be included in Lot 2 as purchased by him. Appellee's objection to this testimony was sustained, and the evidence was excluded. Appellant has not by any point of error assigned this ruling as error, his nearest point being that the court erred in finding that there is no evidence showing the pointing out of boundaries by appellant's predecessors in title. Since any such offered testimony was

3. Emphasis added by us.

excluded by the court, there was as a matter of fact no evidence in the record of such pointing out.

■ However, even considering such evidence, we do not believe it would constitute the transfer of Mills claim of possession, if any, to appellant so as to permit such possession to be tacked to appellant's possession, if any, to constitute a ten year period of possession adverse and hostile to the record owner of the property.

"We concur with appellee's contention that appellants' testimony that they claim the land from fence to fence concerns a mental process or opinion which does not evidence an open visible act manifesting an intention to claim the land adversely.

\* \* \* \* \* \*

"\* \* \* In a suit for title to a tract of land which is not included in the description of the purchased property, but is claimed by adverse possession, possession of the claimant cannot be tacked to that of his predecessor in title to prove possession for the statutory period unless his predecessor claimed the land [4] *and transferred such claim.*" Tankersley v. Randal, Tex.Civ.App., 361 S.W.2d 946, 952, wr. ref. n. r. e.

The character of claim required to be made by the predecessor (Mills) has already been defined in the quotation from Orsborn v. Deep Rock Oil Corp., supra.

See also Harmon v. Overton Refining Co., 130 Tex. 365, 109 S.W.2d 457; on rehearing, 110 S.W.2d 555; affirming Overton Refining Co. v. Harmon, Tex.Civ.App., 81 S.W.2d 207.

Counsel for appellant rely strongly on McAnally v. Texas Co., Tex.Civ.App., 32 S.W.2d 947, aff'd 124 Tex. 196, 76 S.W.2d 997. In that case, the common source conveyed "a part" of Section 8 to Sanders, particularly describing the tract by metes and bounds, and stating that the tract contained 257.65 acres. Sanders enclosed the entire tract by a fence. Several conveyances were made using the same description as in the deed to Sanders. Subsequently the land was conveyed to the Texas Company, the deed describing the property "containing 257.65 acres, \* \* \* more or less, it being the intention of this deed to convey all land under fence now or heretofore enclosing the Maggie A. Teagarden tract, whether on Sur. No. 8, Blk. 'R', or other survey or surveys." (opinion of Court of Civil Appeals, 32 S.W. 2d at p. 949) On resurvey, the land under fence was found to contain 333.5 acres, and this trespass to try title suit was filed to recover the excess acreage. The Supreme Court, in affirming a judgment for the limitation claimants, said:

"The Court of Civil Appeals found that, although the respective deeds on down through the successive claimants did not by their field notes cover the entire tract of land described in the judgment, yet each of the claimants, beginning with Sanders, treated the entire tract as an identity or well-known inclosure, passing by transfer from one claimant to the other, and that each claimant transferred the possession of the entire tract to his succeeding claimant. It concluded that the attribute of privity was thus established.

"That portion of the opinion of the Court of Civil Appeals which discusses the rules applicable to this phase of the case is so well expressed and so thoroughly supported by authorities, all of which we have examined, that we quote it with approval as follows:

" 'Our statute (article 5516, R.S.1925) provides that: 'Peaceable and adverse possession need not be continued in the same person, but when held by different persons successively there must be a privity of estate between them.'

" 'Privity of estate, as said in section 89, vol. 2, Tex.Jur. is shown under the fol-

4. Emphasis added.

lowing circumstances: 'Privity of possession between successive occupants or possessors of the land is shown to have existed, apparently, by proof that the earliest occupant's possession and claim passed or was transferred to the later occupant by agreement, gift, devise or inheritance. The fact of privity is not established where it simply appears that the land was occupied by different persons successively, there being nothing to show that the claim of the earlier was transferred to the later occupant by contract or otherwise.'

" 'In determining the privity of estate by the process of tacking, C. J. vol. 2, p. 91, § 96, states the general rule:

'The general rule is that possession can not be tacked to make out title by prescription where the deed under which the last occupant claims title does not include the land in dispute. It must clearly appear that the particular premises were embraced in the particular deed or transfer, in whatever form it may have been made.'

" 'The important exception is:

" ' "However, the mere fact that the land in dispute is not included in the deed will not of itself operate to deprive the grantee's possession of the land of the attribute of privity. Even though the deed may have contained a defective description as to require correction, yet sufficient privity exists between the successive occupants where there was a parol delivery of possession, and there are numerous decisions to the effect that a mistake in a deed whereby a portion of the premises intended to be conveyed has been omitted in the description does not prevent the grantee from acquiring title by prescription to such portion if there is an actual transfer of the possession thereof. *But an actual transfer of possession is of course necessary where the land is not included in the deed.* (Italics ours.) So it has been held that independently of any question of mistake successive grant-

ors may transfer their possession of a strip of land successively and continuously occupied as part of the granted premises, but not included in the description in any of the deeds, and that by such continuity of possession for the prescriptive period, title by limitations may be acquired. The decisions in this and the preceding section, it may be observed, are readily distinguishable. In the first line of decisions the deed is relied on to establish privity, while in the second line of decisions, the actual transfer of delivery of possession is relied on. This, as was shown in a preceding section, is sufficient to create privity; a parol transfer accompanied by delivery being sufficient for that purpose." ' "

In McAnally, the facts showed actual adverse possession of the disputed area, and enclosure of same by fence, and an actual transfer of the possession from each claimant to his grantee, as stated in the first paragraph copied above, and consequent privity of possession was established. In the present case, there is no evidence of actual adverse possession of the disputed area of such character as of itself gave notice of the exclusive possession required to mature title under the ten-year statute; and the finding of the trial court that there was no transfer of such possession by Mills to appellant, and hence no privity of estate between Mills and appellant is supported by the evidence. Quoting further from the Supreme Court's opinion in McAnally, page 954 (7):

" 'As said in Shuttles v. Butcher, supra: 'An actual transfer of an adverse possession is necessary to attribute privity where the land is not included in the deed.' This excerpt is a brief statement of the main element in this controversy. A purchaser's possession must be referable to that of the vendor.' " (Tex.Civ. App., 1 S.W.2d 661, 665).

We do not believe that the opinion in McAnally, supra, governs the facts of this case here on appeal.

In view of the conclusions reached by us, we hold that the trial court did not err in deciding that appellant had failed to perfect a limitation title to the area in controversy, and that such holding of the court is supported by evidence, and is not against the greater weight and preponderance of the evidence. All of appellant's points have been considered and are overruled.

Judgment affirmed.

## OPINION ON MOTION FOR REHEARING

Appellant has taken exception to the statement in our original opinion that the trial court excluded the evidence of the witness Mills that at the time he and his wife sold Lot 2 to appellant, they showed the Millers the lot and stated that the property line extended to the brush. Appellant Miller's testimony to the above effect on direct examination was excluded on appellee's objection, and is contained in the statement of facts only on bill of exception. Testimony of Miller given on cross-examination concerning any pointing out of property lines, when considered without reference to the stricken evidence, is indefinite as to the location of the eastern boundary.

There do not appear to be any objections to the evidence given by deposition by the witness Mills that he pointed out the brush line to appellant as the eastern boundary of Lot 2. Our statement that all evidence of such pointing out of boundaries was excluded was based on the exclusion of such evidence when subsequently offered by testimony of the appellant, combined with the statement of the trial court in his eleventh conclusion of law that the statements made by Mrs. Christiansen to Mills, and by Mills to Miller as to the location on the ground of the boundary of the tracts conveyed were inadmissible, making immaterial and academic whether or not Mills or appellant relied on such statements.

However, for the reasons stated in our original opinion, considering such evidence of pointing out by Mills to Miller of the property lines to have been admissible and properly before the trial court, it is our view, and we so hold, that the record does not show such a transfer of Mills' claim of possession, if any, to appellant as to permit such possession of Mills to be tacked to appellant's possession, if any, so as to constitute a *ten year* period of possession *adverse and hostile* to the record owner of the property.

We have carefully reviewed all of the points raised in appellant's motion, and remain of the opinion that the judgment should be affirmed.

Motion for Rehearing Overruled.